**FISHER**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

**No. 11866.**

United States Court of Appeals Sixth Circuit.

Feb. 3, 1954.

Robert G. Surridge, Detroit, Mich. (Benjamin E. Jaffe, R. M. O'Hara, Detroit, Mich., on the brief), for petitioner.

Meyer Rothwacks, Washington, D. C. (H. Brian Holland, Ellis N. Slack and Hilbert P. Zarky, Washington, D. C., on the brief), for respondent.

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

SIMONS, Chief Judge.

Involved in this controversy is the question whether defaulted interest due on notes held by the petitioner became on their sale to a third party, for a price substantially in excess of their face value, capital gain to him or ordinary income taxable at income tax rates. There is no factual controversy, the case having been submitted upon a stipulation of facts supplemented by uncontroverted evidence accepted by the Tax Court in its findings.

The petitioner, during the 1944 tax year, was and had been a stockholder of a Florida development corporation and from time to time had advanced it money. On September 1, 1944, these advancements amounted to $133,849.44, evidenced by the corporation's 6% notes which were in default both as to principal and interest, the unpaid interest being $75,574.29. Upon the same date, the petitioner himself was indebted to The Prime Securities Corporation in the amount of $167,475.00, represented by his demand note held by it. The petitioner sold the Florida notes to Prime for a consideration of $200,000.00, the

purchase price being paid by the cancellation of his indebtedness to Prime and Prime's payment to him of $32,525.00, the difference between the purchase price and the canceled obligations of the petitioner. Thereafter, Prime received payments of interest and principal on the Florida notes during the years 1944 through 1950, the entire obligation of the Florida company on the notes being canceled in 1950. In his income tax return for 1944, the petitioner, being on a cash receipts basis, reported as a long-term capital gain the sum of $66,150.56, that being the amount received by him on the sale of the notes above their face value. The Commissioner in determining the deficiency added this amount to net income, eliminated 50% thereof from the reported capital gain and determined that such amount was taxable as ordinary income under the provisions of Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. The Tax Court redetermined the deficiency in income tax found by the Commissioner.

The petitioner asserting that his transaction with Prime was a bona fide arms-length transaction and that the purchase price was fair and reasonable, points out that the sale was for a single consideration of $200,000.00 with no allocation of any part of the purchase price to accrued interest. He says that he sold the notes for a flat price in a single transaction, capital in its nature, which, like the sale of stocks and bonds, results in gain or loss without regard to whether the market price of such securities is enhanced or diminished by defaulted interest or dividends.

We think the fundamental error into which the taxpayer has fallen is that he fails to distinguish, in respect to gains, between the status taxwise of an investor and a lender, or between seller and purchaser. It does not follow that because a transaction may be capital in its nature as to one it is necessarily capital as to the other. One who buys securities that are in default and later sells them at a profit realizes capital gain. One who receives income for the use of money or property or the performance of personal services is taxable upon such income. These propositions are, of course, elementary.

While no exact precedents have been cited and none are found, principles governing the characteristics of income are well understood and have been developed by many cases. In Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, the question presented was whether one who is presently entitled to receive income and who is taxable only on receipt of payment can escape taxation by giving away his right thereto in advance of actual payment. The answer was in the negative. In Hort v. Commissioner, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168, the taxpayer acquired by inheritance real estate subject to a lease. It was there held that a lump-sum payment by the lessee for cancellation of the lease "was clearly a substitute for the rent reserved in the lease" and, thus, taxable as ordinary income to the recipient. In Rhodes' Estate v. Commissioner, 6 Cir., 131 F.2d 50, a sale of dividend rights prior to the time they were payable was held to be ordinary income and not capital gain. Cases represented by Clyde C. Pierce Corporation v. Commissioner, 5 Cir., 120 F.2d 206, which considered the tax status of a purchaser, assignee, or donee, of accrued interest, profits, or dividends, are not apposite because they are concerned with the gain derived from their acquisition after default in the hands of the original owner. Austin v. Commissioner, 6 Cir., 161 F.2d 666. As was said in Harrison v. Schaffner, 312 U.S. 579, 582, 61 S.Ct. 759, 761, 85 L.Ed. 1055, referring to previous decisions of the Supreme Court, "in each of those cases it was held that one vested with the right to receive income did not escape the tax by any kind of anticipatory arrangement, however skillfully devised, by which he procures payment of it to another, since, by the exercise of his power to command the income, he enjoys the benefit of the income on which the tax is laid."

A brief analysis of the petitioner's position will perhaps clarify our view. The petitioner kept his books and made his returns upon a cash receipts basis. Had he chosen the accrual method, the interest payments upon the notes would have been income to him at the time they became due. The law, of course, permits him to adopt either method but the cash receipts basis does not change the character of what he receives from income to capital gain—it merely postpones its taxability until realization. Floyd v. Scofield, 5 Cir., 193 F.2d 594. It was said in the Horst case, supra: "But the rule that income is not taxable until realized has never been taken to mean that the taxpayer, even on the cash receipts basis, who has fully enjoyed the benefit of the economic gain represented by his right to receive income can escape taxation because he has not himself received payment of it from his obligor." [311 U.S. 112, 61 S. Ct. 147] The petitioner received substantially all of his defaulted interest when he sold his notes to Prime, discounted for trading purposes, and it was, in the light of the Horst case, unimportant that he received it not from the Florida corporation but from the purchaser of the notes. As was there further said: "The power to dispose of income is the equivalent of ownership of it. The exercise of that power to procure the payment of income to another is the enjoyment and hence the realization of the income by him who exercises it. * * * The dominant purpose of the revenue laws is the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid."

There is no question here of the bona fides of the sale of the notes to Prime. The Tax Court found that all of the transactions referred to in its findings were bona fide and the Commissioner does not challenge this finding.

Nor is there here challenge to the principle, that a taxpayer may reduce his taxation by all expedients which the law permits. We have recently reviewed the origin and development of this doctrine in Chamberlin v. Commissioner, 6 Cir., 207 F.2d 462, but we also observed that this does not prevent the Government from going behind the form which the transaction takes to ascertain its reality. It is unimportant, therefore, whether the taxpayer did or did not in his terms of sale allocate a portion of the consideration to the sale of the right to recover accrued interest.

We have noted in Maass v. Higgins, 312 U.S. 443, 61 S.Ct. 631, 633, 85 L.Ed. 940, the generalizations which taken from their context would cast doubt upon the rule here applied but the Maass case involved the question of valuation of securities for estate tax purposes where the executor elected to evaluate the estate as of a year after the date of death. They must be construed in the light of the problem then before the court. Even so, Mr. Justice Roberts observed: "It is not denied that, in common understanding, rents, interest, and dividends are income. Under the revenue acts, if such items are collected by a decedent's estate, the executors are bound to return them and pay tax upon them as income. In the case of a living holder, such receipts are never treated as on account of principal." It is clear, moreover, that what the opinion writer had in mind was the prevention of double taxation in the collection of an estate tax, namely, a tax upon the executors for the receipt of accrued dividends and an increase in the corpus of the estate by adding to it unpaid accruals. The opinion has been so interpreted. Randolph E. Paul, "Federal Estate and Gift Taxation," Volume 2, p. 1338: "The court was evidently impressed with the taxpayer's charge of double taxation."

The decision of the Tax Court is affirmed.