ALLEN TOBEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53118.   Filed June 21, 1956.

*Charles Meyer, Esq.*, for the petitioner.
*Thomas R. Charshee, Esq.*, for the respondent.

#### OPINION.

ARUNDELL, *Judge:* Respondent determined a deficiency of $45,902.78 in income tax for the taxable year ended December 31, 1950.   Two issues are involved: (1) Whether the respondent erred in determining that petitioner was taxable in 1950 on a short-term capital gain of $37,529.13 from some 51 "short sales" during the period from October 13, 1943, to January 20, 1949, inclusive, and (2) whether the respondent erred in determining that $50,295.32 of interest which had accrued after petitioner had acquired certain bonds prior to May 8, 1947, and which remained unpaid until 1950, was taxable to petitioner in 1950 when the bonds and defaulted interest were redeemed at par.   Certain additional errors were assigned but have been abandoned.

The facts were stipulated and are summarized below.

1. Petitioner is an individual presently residing at Bedford Village (formerly residing at North Salem, Westchester County, New York). His separate individual income tax return for the calendar year 1950 was filed with the then collector of internal revenue for the fourteenth district, Albany, New York.

Petitioner was for many years senior partner in the New York Stock Exchange brokerage firm of Tobey & Kirk located in New York City.   In or about July 1949 he retired as a partner from the firm.

During 1943, petitioner's firm of Tobey & Kirk needed additional capital in order to comply with the requirements of the New York Stock Exchange.   On behalf of the firm, petitioner, with the approval of the Stock Exchange, made a special arrangement with one of the

firm's customers, Anne W. Collins, hereinafter sometimes referred to as Anne Collins. On September 27, 1943, petitioner entered into a written agreement with Anne Collins whereby $2,175.73 in cash and certain securities specified in the agreement were delivered to petitioner. The cash and securities were taken out of Anne Collins's account in the books of Tobey & Kirk and were transferred to another firm account entitled "Allen Tobey Capital a/c." The agreement, among other things, further provided:

Anne W. Collins * * * has this day loaned to Allen Tobey * * * the following securities for a period from this date to December 31, 1944:

    1,000 shares National Bellas Hess, Inc.
      500    "    Tubize Chatillon Class "A"
    1,800    "    National City Lines, Inc.
      200    "    Pittsburgh Coke & Iron Company Common
    1,000    "    Gar Wood Industries Common
    Cash in the amount of $2,175.73

secured by a first mortgage * * * on real estate owned by Allen Tobey * * * in the sum of * * * ($50,000.00) with interest at the rate of * * * (3%) per annum.

Allen Tobey may contribute the above mentioned securities to the firm of Tobey & Kirk * * * as a contribution of capital by him, or make the same available to the firm as part of the firm's assets and such securities may be held, pledged, sold, transferred, disposed of or otherwise dealt with by the firm as partnership property in like manner as though Allen Tobey had so contributed or made available his own securities * * * Allen Tobey individually undertakes and agrees that on December 31, 1944, he will repay said loan by returning to Anne W. Collins a like amount of said stock and will pay or assign to Anne W. Collins the amount of any cash or stock dividends or rights which Anne W. Collins would otherwise lose by reason of the transaction evidenced hereby. Anne W. Collins does not reserve or retain any property right in the stock loaned as aforesaid but her rights hereunder shall consist solely of the contractual right against Allen Tobey individually to the repayment of said loan in the manner hereinafter specified; and the firm shall not be under any liability to Anne W. Collins by reason of this agreement nor shall it be under any obligation whatsoever to Anne W. Collins on account of said stock or any cash or stock dividends or rights received by Allen Tobey or the firm.

Anne W. Collins shall have the right to have returned to her by Allen Tobey at any time on demand securities of the same kind and amount as any of the securities enumerated in this agreement provided that she assigns and delivers to Allen Tobey in place thereof other securities of equal market value or cash equal to the market value of the securities so returned, and all the provisions of this agreement shall apply to such substituted securities or cash to the same extent as though they or it were all or part of the securities initially loaned.

The above agreement was renewed annually, the last renewal being for a further period of 1 year from December 31, 1948, to December 31, 1949.

All of the securities listed in the agreement are the same securities determined by respondent (with the exception of Tubize Rayon Corp. and Celanese Corporation stocks which were acquired as a result of several reorganizations and split-ups of Tubize Chatillon class "A" stock) as being sold "short," in 51 separate sales, summarized as follows:

612

## SHORT TERM TRANSACTIONS

| Shares | Stock | Date acquired | Year sold | No. of sales | Gross sales | Cost | Expense of sale | Gain or loss |
|---|---|---|---|---|---|---|---|---|
| 100 | National City Lines | May 20, 1950 | Oct. 13, 1943 | 1 | $1,231.29 | | | |
| 1,000 | Gar Wood Industries | May 20, 1950 | Mar. 17, 1944 | 6 | 5,244.34 | | | |
| 700 | National City Lines | May 20, 1950 | Mar. 20, 1944 | 4 | 8,793.61 | | | |
| 200 | Tubize Rayon Corp | May 20, 1950 | Oct. 19, 1944 | 1 | 3,584.76 | | | |
| 1,000 | National Bellas Hess | May 20, 1950 | Oct. 23, 1944 | 4 | 2,274.44 | | | |
| 200 | Pitts Coke & Iron | May 20, 1950 | Oct. 10, 1945 | 2 | 1,907.96 | | | |
| 900 | National City Lines | May 20, 1950 | 1946 | 7 | 34,811.97 | | | |
| 500 | Celanese Corp | May 20, 1950 | 1947 | 4 | 12,324.79 | | | |
| 2,000 | Celanese Corp | May 20, 1950 | 1948 | 16 | 63,763.66 | | | |
| 500 | Celanese Corp | May 20, 1950 | 1948 | 5 | 15,558.47 | | | |
| 100 | National City Lines | May 20, 1950 | Jan. 20, 1949 | 1 | 685.93 | | | |
| | Totals | | | 51 | $150,181.22 | $112,652.09 | | $37,529.13 |

On October 22, 1945, petitioner wrote Anne Collins a letter, the body of which is as follows:

According to the agreement between us on file with the New York Stock Exchange and after various exchanges made by you during the term of this loan to me, secured by mortgage on my Long Island property, as of this date the loan is comprised of the following securities:

| | | |
|---|---|---|
| 100 shares | Babcock & Wilcox |
| 100 " | Consolidated Natural Gas |
| 100 " | Consolidated Edison |
| 100 " | Emerson Electric |
| 200 " | Great Western Sugar |
| 200 " | Marshall Field |
| 1,000 " | National City Lines |
| 100 " | Pitney Bowes |
| 200 " | Textron Inc. (New) |
| 1,800 " | Tubize Rayon |

and a credit balance of $104.22

On April 30, 1946, petitioner wrote Anne Collins agreeing—

to pay you six per cent interest on any cash received from the proceeds of sale, on your instructions, of any securities in your loan to me during the term of this agreement.

On May 10, 1946, petitioner wrote Anne Collins a letter, the body of which is as follows:

According to the agreement between us on file with the New York Stock Exchange and after various exchanges made by you during the term of this loan to me, secured by mortgage on my Long Island Property, as of this date the loan is comprised of the following securities:

| | | |
|---|---|---|
| 100 shares | Babcock & Wilcox |
| 100 " | Central Aguirre Associates |
| 1,200 " | Celanese Corp. of America |
| 100 " | Consolidated Natural Gas |
| 100 " | Consolidated Edison N Y |
| 200 " | Great Western Sugar |
| 200 " | Marshall Field |
| 200 " | Textron, Inc. (New) |

and a credit balance of $37,939.49.

On October 2, 1947, petitioner wrote Anne Collins a letter, the body of which is as follows:

For and in consideration of your signing satisfaction piece for the bond and mortgage held by you on my property at Southold, Long Island, I hereby agree to turn over to you, as collateral on your loan to me in lieu of the mortgage, $50,000.00 Indian River Islands Corporation Ten Year 6% Bonds.

This in no way affects any of the terms of the loan made to me other than the substitution of collateral.

All the transactions relating to the securities and cash (referred to hereinabove in the September 27, 1943, agreement and in the various modification and renewal agreements thereof) were recorded in the "Allen Tobey Capital a/c" in the books of account of Tobey & Kirk.

During the effective period of the September 27, 1943, agreement and renewals thereof, Anne Collins did in fact substitute and exchange various securities, all as permitted by the agreements.

During the effective period of the September 27, 1943, agreement and renewals thereof, the firm of Tobey & Kirk made quarterly check payments of $375 to Anne Collins, representing a quarterly payment based on a 3 per cent per annum charge on $50,000 of collateral held by her. From December 1943 to March 1949, a total of $8,250 in such interest was paid to her. Each such payment was charged on the books of the firm to "Allen Tobey Capital a/c."

During the period from April 1946 to May 1949, Tobey & Kirk made monthly check payments to Anne Collins in the aggregate sum of $10,006.32 representing 6 per cent interest per annum on cash proceeds received from security sales, as required by the April 30, 1946, letter from petitioner to Anne Collins. All such sums were charged to the "Allen Tobey Capital a/c."

During the period from October 20, 1944, to December 17, 1948, Tobey & Kirk made various check payments to Anne Collins in the aggregate sum of $31,827.82 and such payments were all charged to the "Allen Tobey Capital a/c." This total amount of $31,827.82, less the $2,175.73 mentioned in the September 27, 1943, agreement, plus $83,000 paid by petitioner in May 1950 to Anne Collins for a general release from her, make up the total of $112,652.09 which the respondent determined represented the cost of the securities allegedly sold "short" by petitioner during the period from October 13, 1943, to January 20, 1949, inclusive. The release executed on May 3, 1950, provided in part as follows:

GREETING: Know Ye, That I, ANNE W. COLLINS, individually and as Executrix of the Estate of Walter T. Collins, deceased, for and in consideration of the sum of ___ ONE DOLLAR ($1.00) and other good and valuable consideration * * * to me in hand paid by ALLEN TOBEY the receipt whereof is hereby acknowledged, have remised, released, and forever discharged * * * the said ALLEN TOBEY * * * of and from all, and all manner of action and actions * * * which against said ALLEN TOBEY I ever had * * * whatsoever from the beginning of the world to the day of the date of these presents, including but without in any way limiting, the generality of the foregoing, any and all claims or demands, under, arising out of, or relating to a certain Loan Agreement dated September 27, 1943, between said Anne W. Collins and Allen Tobey and all modifications, amendments and extensions thereof.

During the period from September 27, 1943, until petitioner retired from the firm of Tobey & Kirk in July 1949, Anne Collins was paid all dividends by Tobey & Kirk checks with respect to the securities or substituted securities involved in the agreements.

All the securities sold by petitioner from October 13, 1943, to January 20, 1949, inclusive, for a total consideration of $150,181.22, as

set out above, were sold on a security exchange per instructions of Anne Collins or her agent. All such security sales (with the exception of the January 20, 1949, transaction) were reported by Anne Collins on her applicable income tax returns (individually or jointly with her husband, Walter T. Collins). After Anne and her husband (now deceased) filed a joint income tax return for 1948 they filed an amended return for that year and omitted the sales of the 2,000 shares of Celanese Corporation stock from May 13, 1948, to May 20, 1948, inclusive, for the total selling prices of $63,763.66. They showed on their original 1948 return a total cost of $38,075.86 for the 2,000 shares and originally reported a capital gain on such sales of $25,687.80.

2. Petitioner acquired $103,500 of Indian River Island Corporation 6 per cent bonds from November 12, 1936, to May 7, 1947. The bonds were issued by the Indian River Islands Corporation and were secured by a 10-year mortgage dated January 1, 1931, to Manufacturers Trust Company, New York (successor by merger with Chatham Phenix National Bank and Trust Company), and James F. McNamara, as trustees. The bonds were issued with interest coupons attached or in registered form and became past due on January 1, 1941. Interest on the bonds was payable semiannually on January 1 and July 1. On July 1, 1937, the corporation defaulted on the semiannual interest then due and remained in default until May 12, 1950, when it redeemed $112,500 face value of all outstanding bonds, plus 76 per cent accrued interest thereon. Out of the $103,500 of bonds acquired by petitioner as aforesaid, $50,000 face value thereof was held as collateral and registered in the name of Hemphill, Noyes, Graham, Parsons & Co. for and on behalf of Anne Collins. The balance of $53,500 of the $103,500 acquired by petitioner was assigned to others as collateral for other creditors of petitioner. The creditors of petitioner caused the liquidation and retirement of the bonds since, as creditors holding the bonds, they threatened to foreclose the mortgage.

Upon the redemption of the bonds and defaulted interest, the Indian River Islands Corporation delivered a check for $88,591.66 payable to Hemphill, Noyes, Graham, Parsons & Co. which held $50,000 in face value of the bonds then registered in the latter firm's name and which was pledged to secure the loan of Anne Collins referred to under the first issue. Hemphill, Noyes, Graham, Parsons & Co. at that time, on or about May 12, 1950, delivered to petitioner a check for $5,591.66 endorsed to Allen Tobey, the difference of $83,000 being the amount agreed upon as the settlement of the debt due by Allen Tobey to Anne Collins.

On his return for 1950, petitioner did not report any income from the Collins loan but reported a long-term capital gain of $26,715.74

from the redemption of the bonds, and a preferred stock transaction not involved herein, computed as follows:

| | | |
|---|---:|---:|
| Gross sales price of bonds | | $183,384.74 |
| Gross sales price of stock | | 6,324.00 |
| Total | | $189,708.74 |
| Less: Cost of bonds | $19,850.00 | |
| Cost of stock | 2,200.00 | |
| Legal expenses (bonds) | 2,073.85 | |
| | | 24,123.85 |
| Net long-term capital gain | | $165,584.89 |
| To be taken into account (50 per cent) | | 82,792.45 |
| Less capital loss carryover, 1945–1949, inclusive | | 56,076.71 |
| Net long-term capital gain (taxable) | | $26,715.74 |

The above amount of $183,384.74 reported as gross sales price of bonds represents the face value of the bonds acquired by petitioner in the amount of $103,500 and $79,884.74 of defaulted interest. The respondent determined that $29,589.42 of the defaulted interest represented a return of capital and that the balance of $50,295.32 represented interest taxable as ordinary income. The respondent further determined a net long-term capital gain of $57,644.79 from the redemption of the bonds (and the preferred stock transaction) computed as follows:

| | | |
|---|---:|---:|
| Gross sales price of bonds ($103,500 plus $29,589.42) | | $133,089.42 |
| Gross sales price of stock | | 6,324.00 |
| Total | | $139,413.42 |
| Less: Cost of bonds | $19,850.00 | |
| Cost of stock | 2,200.00 | |
| Legal expenses (bonds) | 2,073.85 | |
| | | 24,123.85 |
| Net long-term capital gain | | $115,289.57 |
| To be taken into account (50 per cent) | | 57,644.79 |

To this long-term capital gain of $57,644.79 the respondent added the previously mentioned short-term capital gain of $37,529.13 (from the alleged short sales), thus making a total net gain from the sale or exchange of capital assets of $95,173.92, which he reduced to $35,050.29 by allowing capital loss carryovers of $33,407.89 (instead of the $56,076.71 claimed by petitioner in his return) and by allowing credit for the capital gain reported by petitioner of $26,715.74.

We disagree with the respondent's determination on the first issue but agree with his determination on the second.

1. We do not think the 51 sales made between October 13, 1943, and January 20, 1949, were short sales made for petitioner's account as contended for by respondent. Petitioner contends that the sales were

long sales made for the account of Anne Collins. Although the stipulated facts are not as complete as they probably should have been, we think they are sufficient to show that the contention made by petitioner is correct.

The September 27, 1943, agreement between petitioner and Anne Collins was clearly that of a "loan" of securities and a small amount of cash. There is no indication in the agreement that it was being made for the purpose of loaning securities to petitioner to be used in making deliveries on short sales made for petitioner's account. The purpose of the agreement was to make available to petitioner additional capital so that petitioner could comply with the requirements of the New York Stock Exchange. The agreement was drawn with that object in view and with the approval of the Exchange. Anne Collins reserved the right to have returned to her at any time on demand securities of the same kind and in the same amount as those loaned, provided that she deliver to petitioner other securities or cash equal in market value to the securities so returned so that the amount of the loan should remain intact. Anne Collins exercised this right and did in fact substitute and exchange various securities all as permitted in the agreement.

It was stipulated that the 51 sales in question "were sold on a security exchange per instructions of said Mrs. Anne W. Collins or her agent." Certainly this tends to negative respondent's contention that the sales were in fact short sales made for petitioner's account. This view finds further support in the fact that petitioner paid Anne Collins interest on the money received as proceeds of the securities sold and in the fact that Anne Collins for many years reported these several sales in her tax returns as if made for her account. It is true that in her amended tax return for 1948 she treated a part of the sales as not made for her account, but we do not regard this as too important because in the same amended return she treated other sales of the same kind of stock as being for her account. Also, it was stipulated that between 1944 and 1948 the amount of $31,827.82 was paid to Anne Collins which was in addition to all interest and cash dividends paid to her. It would seem that this amount must have been a part of the proceeds from the sales and was paid in line with the understanding that the sales were made for Anne's account.

After a careful consideration of all the stipulated facts, we are of the opinion, and so hold and find, that the 51 sales in question were made for the account of Anne Collins and were not short sales made by petitioner for his own account. It follows that the respondent erred in including in petitioner's net income for the year 1950 short-term capital gain in the amount of $37,529.13 or any other amount from the 51 sales in question.

2. As to the second issue, the stipulated facts show that from No-

vember 12, 1936, to May 7, 1947, petitioner purchased $103,500 face value of bonds upon which $29,589.42 of interest had accrued but was in default for a total consideration of $19,850. Between the time of purchase and May 12, 1950, additional interest of $50,295.32 accrued and was in default. At that time, the obligor redeemed the bonds, together with all the accrued interest, at par in the total amount of $183,384.74. Petitioner contends that under section 117 (f)[1] of the Internal Revenue Code of 1939 the difference between the amount received of $183,384.74 and the cost of $19,850, plus some expenses of $2,073.85, is long-term capital gain. The respondent contends that the interest which accrued after the purchase, in the amount of $50,295.32, is includible in gross income under section 22 (a)[2] of the 1939 Code as "interest" and that only the difference between the remaining $133,089.42 and the above cost, plus expenses, is long-term capital gain. The question thus presented is the same as was involved in *Warner A. Shattuck*, 25 T. C. 416, wherein we held that interest which accrued after certain bonds were acquired was taxable as interest under section 22 (a) of the 1939 Code and not as a long-term capital gain under section 117 (f) of the same Code. It follows that our holding here should likewise be for the respondent. See also *Erskine Hewitt*, 30 B. T. A. 962, wherein we held that where the taxpayer had purchased bonds and defaulted interest coupons, the subsequent collection of the purchased defaulted coupons was not a collection of "interest" so far as the purchaser was concerned, but represented to him a return of capital, just as the respondent has determined in the instant case as far as the $29,589.42 of defaulted interest is concerned. In the course of our Opinion, however, we said (p. 965):

The situation we have before us in the instant case should not be confused with that where the owner of bonds purchases them before there is any default in interest. In such a case there is of course no purchase of defaulted interest and in subsequent years if there is a default in interest, which is subsequently paid, it is income to the owner of the bonds in the year in which it is paid. Cf. *Landon* v. *Commissioner*, 59 Fed. (2d) 989, last paragraph of the court's opinion.

We hold, therefore, that the interest which accrued after the purchase, in the amount of $50,295.32, is taxable to petitioner as ordinary income and not as long-term capital gain.

*Decision will be entered under Rule 50.*

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(f) RETIREMENT OF BONDS, ETC.—For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.

[2] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived * * * from interest * * *