ESTATE OF HAMILTON C. RICKABY, DECEASED, MARCY W. RICKABY, EXECUTRIX, AND MARCY W. RICKABY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 55403, 56023. Filed February 28, 1957.

*David G. Sacks, Esq.*, and *Allan J. Parker, Esq.*, for the petitioners.

*Clarence P. Brazill, Esq.*, for the respondent.

888

OPINION.

OPPER, *Judge:* When bonds which are making current payments of undefaulted interest are bought and sold, it is frequently, if not ordinarily, the practice to make an adjustment for the interest earned to the date of sale. In that event, the portion of the interest already paid for, is, when subsequently received, not income of any kind to the purchaser. *L. A. Thompson Scenic Railway Co.*, 9 B. T. A. 1203. See *Charles T. Fisher*, 19 T. C. 384, 387, affd. (C. A. 6) 209 F. 2d 513, certiorari denied 347 U. S. 1014.

In the present situation, however, interest was in default [1] when petitioner bought the bonds. Although a substantial amount had accumulated and was unpaid at the time, no segregation of the purchase price between principal and interest was made by the parties. In other words, petitioner bought the bonds flat.

By the time the present tax years commenced, sufficient payments had been made on the bonds so that petitioner had recovered her basis. But she had not yet received their face amount. Additional payments received in the tax years in excess of basis but still falling short of the principal due were reported by petitioner as capital gain. Respondent treated them as ordinary income, but not as "interest income." His statement on brief is:

> Respondent agrees that the payments in question in the instant case are *returns of capital as opposed to "interest income"* but contends that unless petitioners can show that they are entitled to capital gains treatment under section 117, such payments are necessarily taxable as ordinary income under section 22 (a). See *Corn Products Refining Company* v. *Commissioner* (1955) 350 U. S. 46, 1955 P–H par. 72,023, rehearing denied, 350 U. S. 943.[2] [Emphasis added.]

Apparently the argument being made is that while this could never be interest income because it represented payments already in default when petitioner bought the bonds, see *William H. Noll*, 43 B. T. A. 496, it was ordinary income under section 22 (a), Internal Revenue Code of 1939, because the provisions of section 117 (f) do not reach it.[3]

---

[1] Respondent makes no contention that this income had not accrued prior to purchase on the ground that interest payments before maturity were dependent on earnings, of which there had been none up to that time. Compare *National City Lines* v. *United States*, (C. A. 3) 197 F. 2d 754, with *Campbell* v. *Sailer*, (C. A. 5) 224 F. 2d 641. We accordingly treat this as a typical instance of interest due but defaulted prior to purchase.

[2] It is clear that *Corn Products Co.* v. *Commissioner*, 350 U. S. 46, rehearing denied 350 U. S. 943, is no authority for this statement. There the Supreme Court held (at page 52) : "Congress intended that profits and losses arising from the everyday operation of a business be considered as ordinary income or loss rather than capital gain or loss. The preferential treatment provided by § 117 applies to transactions in property which are not the normal source of business income. * * *"

[3] SEC. 117. CAPITAL GAINS AND LOSSES.

(f) RETIREMENT OF BONDS, ETC.—For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.

For this conclusion respondent relies on Rev. Rul. 55–433, 1955–2 C. B. 515, and this in turn on the contention that section 117 (f) does not apply because the obligation being paid was not "issued" by the corporation.

We think this proposition cannot be maintained. In the first place, other obligations than that to pay principal are considered to have been "issued" notwithstanding that they may not arise until a bond has been in existence for some time. In *District Bond Co.*, 1 T. C. 837, for example, the debtor was permitted to redeem the bonds in advance of maturity upon payment of principal and interest to date and an additional "premium." We said (at page 840) :

Upon the retirement of bonds at a price in excess of cost, the resulting profit is treated for Federal income tax purposes as capital gain. Section 117 (f) of the 1938 Act. * * * With this exception [the interest], however, the proceeds are treated as receipts from the sale or exchange of the bonds, *and there is nothing in the statute to remove premiums from this treatment.* * * * [Emphasis added.]

Again, while this petitioner had recovered her basis by the time the payments in controversy were made, she had by no means as yet collected the principal amount. There is hence no reason to assume that she would necessarily be receiving something over and above principal which might be characterized as interest or some other kind of ordinary income. Cf. *Charles T. Fisher, supra.* But see *Clyde C. Pierce Corp.* v. *Commissioner*, (C. A. 5) 120 F. 2d 206, affirming a B. T. A. Memorandium Opinion. Assuming the debtor had the right to characterize what these payments constituted, see *Huntington-Redondo Co.*, 36 B. T. A. 116; G. C. M. 2861, VII–1 C. B. 255, they should be attributed to interest which had already been defaulted when the bonds were purchased. If this is so, the obligation being already in existence was bought by petitioner along with the bond itself. *Erskine Hewitt*, 30 B. T. A. 962; *William H. Noll, supra.* No reason appears why it should not have constituted a capital asset which, when disposed of, would result in capital gain.

Purchase of the bonds in question included in the price paid not only the title to the securities, but the right to receive interest accrued and unpaid. As to the petitioner the whole constituted a capital acquisition and the subsequent payment of the defaulted interest was a return of a portion of his investment, regardless of the label attached by the payor. [*R. O. Holton & Co.*, 44 B. T. A. 202, 205.]

Finally, the purpose of section 117 (f) having been to assimilate amounts received on retirement to those resulting from sales or exchanges, we think it would do violence to the congressional purpose to hold that this payment was not capital gain. Respondent has conceded that the amount received was not "interest income" but was a "return of capital." We think he would be obliged to agree that

if this bond had been sold instead of being retired, amounts received in excess of basis from whatever source would be capital gain. *Clyde C. Pierce Corp.* v. *Commissioner, supra; R. O. Holton & Co.,* 44 B. T. A. 202.

a purchase, at a flat price, of securities of political subdivisions, which are in default, is a capital transaction. * * * a capital gain or loss on account thereof is to be determined by the difference between the amount paid, and the amount received therefor, wholly without regard to whether this amount is received, by resale of the securities as a whole, resale of the bonds with coupons detached and a collection of the coupons, or by a collection of the whole principal and accrued interest from the political subdivision. [*Clyde C. Pierce Corp.* v. *Commissioner, supra,* at p. 208.]

The highly artificial test of whether the ultimate payment of principal is likely leaves us wholly unconvinced. If this were the proper approach, the amounts in question should be viewed as the equivalent of interest, cf. *Charles T. Fisher, supra,* but respondent concedes, as indeed he probably must under Rev. Rul. 55–433, *supra,* that this is not interest income. If the principal is so clearly recoverable as to make these payments taxable as ordinary income, then why should petitioner be permitted first to recover her basis? Yet Rev. Rul. 55–433, *supra,* is clear that no tax will be due until basis has been recovered, a position perhaps forced upon respondent by such cases as *Erskine Hewitt* and *William H. Noll,* both *supra.* We see no more reason than in those cases to resort to hairbreadth distinctions and questionable theories. See also, *Allen Tobey,* 26 T. C. 610.

We conclude that, at least as applied to the present facts, Rev. Rul. 55–433, *supra,* is not a permissible construction of the statute and, accordingly, will not be followed. These amounts were properly reported by petitioner as capital gain.

*Decisions will be entered under Rule 50.*