CENTRAL BUILDING AND LOAN ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77281. Filed June 7, 1960.

*Robert H. Walker, Esq.*, for the petitioner.
*John O. Hargrove, Esq.*, for the respondent.

WITHEY, *Judge:* A deficiency in petitioner's income tax for the taxable year ended June 30, 1956, has been determined by respondent in the amount of $7,821.11. The primary issue is whether respondent has erred in failing to treat as exempt, income derived by petitioner after its adoption of a plan of complete liquidation. Should our decision be that respondent has not so erred, an ancillary issue is whether the assessment of the deficiency is barred by a statute of limitations.

### FINDINGS OF FACT.

Nearly all of the facts have been stipulated and are so found.

The stipulated facts are as follows:

Petitioner is a savings and loan corporation. A major function of such a corporation is the making of loans secured by real estate. Petitioner was duly incorporated under the laws of the State of California, and was dissolved by the filing of a certificate of dissolution with the secretary of state of the State of California on June 28, 1956.

At a meeting held on January 17, 1956, petitioner's shareholders adopted certain resolutions as follows:

AND FURTHER RESOLVED, That whereas it is deemed advisable and for the best interests of the shareholders of this corporation that it wind up its affairs and voluntarily dissolve:

Now, THEREFORE, this corporation and its shareholders hereby elect to wind up its affairs and voluntarily dissolve.

AND FURTHER RESOLVED, That the officers and directors of this corporation be and they are hereby authorized and directed to file the certificate and give the written notice required by Sections 4603 and 4605, respectively, of the California Corporations Code;

AND FURTHER RESOLVED, that the following plan of liquidation of this corporation is hereby adopted:

That the officers and directors of this corporation shall make the sale, transfer and assignment of the engagements, funds and properties of this corporation to Guaranty Building and Loan Association as required by the Agreement of Assignment between Home Savings and Loan Association, Guaranty Building and Loan Association, and this corporation, dated January 16, 1956, and approved at this meeting; and that thereafter the officers and directors of this corporation are hereby authorized to take such further action as may be necessary or proper to wind up the affairs of this corporation and to dissolve it, and to distribute its remaining assets to its stockholders (less assets deemed by the Board of Directors necessary to be retained to meet claims) within 12 months following the date of this resolution.

On March 14, 1956, petitioner filed with the secretary of state of the State of California its Certificate of Election to Wind Up and Dissolve, in accordance with section 4603 of the California Corporations Code.

By June 20, 1956, petitioner had distributed all of its assets (to wit, cash) remaining after the conveyance and transfer to Guaranty Building and Loan Association on March 30, 1956, to its shareholders in complete liquidation of petitioner, except the sum of $32,245.68, which was placed in trust for the purpose of meeting claims against petitioner, and distributing the balance to petitioner's shareholders. The amount placed in trust for said purpose was reasonable.

On June 28, 1956, petitioner filed its final certificate of dissolution with the secretary of state of the State of California, thereby completing petitioner's dissolution.

Petitioner at all times herein mentioned kept its books and filed its Federal income tax returns on the cash receipts and disbursements method.

On May 22, 1956, petitioner filed with the district director of internal revenue at San Francisco, California, an income tax return for the period January 1 to March 31, 1956, showing a net income of $21,678.74, and a tax of $6,503.62, of which $3,251.81 was paid to the district director on May 22, 1956. On July 13, 1956, petitioner filed an amended final income tax return for the period January 1 to June 30, 1956, disclosing a net income of $7,986.46 and a tax of $2,395.94 and claiming a refund of $855.87.

From testimony adduced and documentary evidence we find the following facts:

On the date of sale of its assets to Guaranty, interest had been earned in the amount of $30,138.03, but was not then due and payable, upon outstanding note obligations issued to petitioner. The earned, but uncollected, interest was not separately reported as taxable income by petitioner in its 1956 return, but was included in the amount of $171,351.59, which was shown as nontaxable gain in a schedule attached to its return.

The respondent has recomputed petitioner's income by adding the earned, but uncollected, interest to taxable income.

In its corporate income tax return for the period January 1, 1956, to March 1, 1956, filed with the district director at San Francisco on May 22, 1956, and attached thereto, petitioner by letter notified the district director as follows:

We enclose our check in the amount of $3,251.81 representing our first installment of our 1956 tax return, as this Association is in the process of full liquidation.

We request an early determination of our final tax status.

On August 29, 1956, petitioner mailed to respondent the following additional letter:

On May 21, 1956, this Association filed a final return for the three months ending March 31, 1956, which return indicated a tax liability of $6,503.62, of which one-half, or $3,251.81, was paid at that time. On July 12, 1956, an amended final return was filed indicating an over-payment of $855.87, at which time you were advised that the Association had completed liquidation and asked for an early final determination and audit.

Today we received your statement calling for the balance of our original final return. In talking to your Oakland office, it was suggested that this letter be sent and to return the statement and ask that you hold this matter in abeyance until a final audit has been completed.

### OPINION.

Respondent has recomputed petitioner's taxable income under the authority vested in him by virtue of section 446(b), I.R.C. 1954,[1] on the basis of the line of authority represented by *Lucas* v. *Earl*, 281 U.S. 111, and our decisions in *Charles T. Fisher*, 19 T.C. 384, affd. 209 F. 2d 513, certiorari denied 374 U.S. 1014; *Allen Tobey*, 26 T.C. 610; and *Warner A. Shattuck*, 25 T.C. 416. His contention is that the earned interest upon note obligations which were sold to Guaranty was accrued income to petitioner at the date of the sale, which income had accrued as of that date even though not yet collectible from the obligors under the terms of such note obligations; that even though petitioner was a cash basis taxpayer, failure to treat the interest as accrued income on the date of sale would seriously distort petitioner's true taxable income.

Petitioner contends that because it has sold its right to collect the income in question subsequent to and within 12 months of its adoption of a plan of complete liquidation even though the interest might constitute income on an accrual basis, it nevertheless does not constitute recognized gain under the provisions of section 337(a) of the 1954 Code.[2]

---

[1] SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(b) EXCEPTIONS.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.

[2] SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

(a) GENERAL RULE.—If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

It seems clear to us that respondent must prevail for petitioner's case, contingent as it is upon the fact that a "sale" of its right to collect the interest in question has taken place, is premised upon an unsound ground. The parties are in agreement that the amount of $171,351.59 shown by petitioner in its return as nontaxable gain upon the sale of its assets includes the interest item in controversy in the amount of $30,138.03. We find therefore that on the date of its receipt of the former figure it was actually paid interest in the latter amount. In lieu of a "sale of the right to receive interest," there was effectuated at that time an actual collection of interest by petitioner. Respondent was not compelled to treat the interest as accrued for it was actually received. Because the nonrecognition of gain or loss under section 337(a) is with respect only to the sale or exchange of property, it can have no application to the transaction here at issue for no sale took place and it is not contended that the receipt and collection of interest represented an exchange of property.

It seems clear too that respondent must prevail on the limitation issue. Section 6501(d), I.R.C. 1954,[3] provides a special 18-month period of limitation within which respondent must assess an income tax and within which any proceeding in court to collect such tax without assessment may be instituted provided the taxpayer files a written request for early assessment "after the return is made and filed in such manner and such form as may be prescribed by regulations of the Secretary or his delegate." Respondent is his delegate. He has adopted regulation 301.6501(d)–1, Proceed. and Admin. Regs., which was in force and effect on the date of all communications by petitioner to respondent referred to in our findings. The regulation provides that the request for early assessment be filed after the taxpayer's income tax return is filed; that it be filed with the district director of internal revenue with whom the return was filed;

[3] SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION.

(d) REQUEST FOR PROMPT ASSESSMENT.—Except as otherwise provided in subsection (c), in the case of any tax (other than the tax imposed by chapter II of subtitle B, relating to estate taxes) for which return is required in the case of a decedent, or by his estate during the period of administration, or by a corporation, the tax shall be assessed, and any proceeding in court without assessment for the collection of such tax shall be begun within 18 months after written request therefor (filed after the return is made and filed in such manner and such form as may be prescribed by regulations of the Secretary or his delegate) by the executor, administrator, or other fiduciary representing the estate of such decedent, or by the corporation, but not after the expiration of 3 years after the return was filed. This subsection shall not apply in the case of a corporation unless—

(1) Such written request notifies the Secretary or his delegate that the corporation contemplates dissolution at or before the expiration of such 18-month period; and

(2) The dissolution is in good faith begun before the expiration of such 18-month period; and

(3) The dissolution is completed.

the request must be transmitted separately from any other document; it must set forth the classes of tax and the taxable period for which the prompt assessment is requested; it must clearly indicate that it is a request for prompt assessment under section 6501(d).

The regulatory requirements for filing and content of the request for early assessment are clearly within the framework of section 6501(d) and, due to the volume of returns filed each year, an administrative necessity in order that such requests are not lost or disregarded in the routine function of respondent's office and due notice of the special treatment requested brought to the attention of respondent. Indeed, petitioner makes no contrary contention, but relies upon the contention that by its letters to respondent it has complied with the regulation.

In this we cannot agree. Petitioner attached a letter to its original income tax return for the period January 1, 1956, to March 31, 1956, which it filed with the district director of internal revenue at San Francisco on May 22, 1956. The full content of the letter is set forth in our findings. It fails to comply with respondent's regulation in nearly all respects. It was not mailed separately, but actually attached to a tax return. It failed to set forth the class of tax or the taxable period for which early assessment was requested, and it in fact did not request an early assessment of tax under section 6501(d). The second letter mailed to respondent August 29, 1956, also set forth in full in our findings, failed to comply with the regulatory requirements except for the fact that the second letter was mailed to respondent separately from any other document. Taken together both letters have at most the combined effect of calling to respondent's attention the fact that petitioner was in the process of liquidation and desired "an early determination of our final tax status" or an early "audit."

As we have noted above the regulation is designed to flag requests for special early assessment so that it will be clear to respondent that a taxpayer desired to specifically take advantage of section 6501(d); that when he says "early" he does not mean the term in any ordinary sense, but rather in the sense implied by that section which imposes upon respondent an extraordinarily short 18-month period of limitation within which he must carry out an assessment function not otherwise required in a period shorter than 3 years from the filing date of a tax return. Although we do not have reason to believe petitioner deliberately sought to hide its request for early assessment from respondent, the manner of transmittal of its first letter and the noncommittal nature of the second, when viewed in the light of the regulatory requirements, and respondent's administrative problem with respect to section 6501(d) requests,

certainly had that effect. For petitioner's failure to comply with the regulation, we must decide this issue for respondent.

*Decision will be entered for the respondent.*