RICHARD T. GRAHAM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 72963.   Filed June 30, 1961.

*George R. Wagner, Esq.,* for the petitioner.
*Norman L. Rapkin, Esq.,* for the respondent.

ATKINS, *Judge:* The respondent determined deficiencies in income tax for the taxable years 1954 and 1955 in the respective amounts of $803.87 and $839.77.

.The question presented is whether certain payments received by the petitioner in the years in question pursuant to an award of the Mixed Claims Commission, United States and Germany, constituted ordinary income or capital gain.

### FINDINGS OF FACT.

Some of the facts have been stipulated and the stipulations are incorporated herein by this reference.

The petitioner is an individual residing in Tarrytown, New York. For the taxable years 1954 and 1955 he filed Federal income tax returns with the district director of internal revenue, Lower Manhattan, New York, New York.

On August 10, 1922, the United States and Germany entered into an agreement (Treaty Series, No. 665, p. 2601), providing for the establishment of the Mixed Claims Commission, United States and Germany, to determine the amount to be paid by Germany, in accordance with a treaty concluded by the two Governments on August 25, 1921, in satisfaction of Germany's financial obligations to the United States and its nationals on account of losses and damage sustained during World War I. It was therein provided that the decisions of the Commission should be accepted as final and binding upon the two Governments.

The Mixed Claims Commission, under Docket No. 5077, made an award (the precise time and amount not shown by the record) to Charles E. Miller and Thomas H. Baskerville as receivers of Lucy Manufacturing Corporation. It is stipulated that such award was not granted with, nor has it ever had, interest coupons attached.

On March 10, 1928, the Congress enacted the "Settlement of War Claims Act of 1928" (Act of March 10, 1928, ch. 167, 45 Stat. 254), which was subsequently amended by the Act of March 3, 1933 (ch. 210, Pub. L. 426, 72d Cong., 2d Sess.). Such Act as amended provided that the Secretary of State should from time to time certify to the Secretary of the Treasury the awards of the Mixed Claims Commission; that the Secretary should pay an amount equal to the principal of each award so certified, plus the interest thereon, in accordance with the award, accruing before January 1, 1928; that the Secretary should pay annually simple interest, at the rate of 5 percent per annum upon such amounts remaining unpaid, beginning January 1, 1928, until paid; that all such payments should be made in accordance with such regulations as the Secretary might prescribe (but only out of the German special deposit account created by the Act); that payment should be made only to the person on behalf of whom the award was made, except that in the case of an assignment of an award, or an assignment (prior to the making of the award) of the claim in respect of which the award was made, by any such person, made in writing,

duly acknowledged, and filed with the application for payment, such payment should be made to the assignee; and that there should be deducted from the amount of each payment, as reimbursement for the expenses incurred by the United States in respect thereof, an amount equal to one-half of 1 percent thereof.

By agreement between the United States and Germany dated June 23, 1930 (League of Nations Treaty Series 106:121), it was agreed that Germany should pay and the United States should accept in full satisfaction of all of Germany's obligations remaining on account of the awards, including interest thereon, entered and to be entered by the Mixed Claims Commission, the sum of 40,800,000 reichsmarks for the period September 1, 1929, to March 31, 1930, and the sum of 40,800,000 reichsmarks per annum from April 1, 1930, to March 31, 1981. It was provided that, as evidence of this indebtedness, Germany would issue to the United States bonds dated September 1, 1929, and maturing serially on March 31, 1930, and each September 30 and March 31, thereafter up to and including March 31, 1981. It was provided that these obligations of Germany to the United States should cease as soon as all the payments contemplated by the Settlement of War Claims Act of 1928 had been completed and that the bonds not then matured should be canceled and returned to Germany. Such bonds were not to bear interest except that if payment should be postponed beyond the due date interest should be payable at 5 percent. The United States agreed to accept the full faith and credit of Germany as the only security and guaranty for the fulfillment of Germany's obligations. These bonds were payable at the Federal Reserve Bank of New York for credit in the general account of the Treasurer of the United States. No payments were made by the German Government on account of any of these bonds maturing after September 30, 1931.

As of November 9, 1931, the principal amount of the award in favor of Lucy Manufacturing Company was $71,893.83 and the amount of interest was $37,145.30. During the period November 9, 1931, through April 18, 1941, interest accrued on the principal of such award in the amount of $33,927.98. Interest continued to accrue thereafter.

At a time not disclosed by the record Manufacturers Trust Company became trustee for the Lucy Manufacturing Company. At a judicial sale held on May 24, 1940, the petitioner, in conjunction with Frederick J. Wilkens and George R. Wagner, purchased from Manufacturers Trust Company an 85 percent interest in the award of the Mixed Claims Commission made in favor of Lucy Manufacturing Company. Such 85-percent interest was purchased in the name of Frederick J. Wilkens at a cost of $10, and the assignment was in his name only. Wilkens mailed such assignment to the Bureau of Ac-

counts, United States Treasury Department. Such Bureau acknowledged receipt of the assignment and retained it. The petitioner had a one-third interest in such 85-percent interest at all times pertinent herein. The petitioner's share of the total amount of principal and interest due on the award at the time of acquisition was approximately $39,500.

On April 18, 1941, an amount of $3,594.69 was paid on the Lucy Manufacturing Company award leaving unpaid principal in the amount of $68,299.14 and interest in the amount of $71,073.28. During the period 1941 through 1952 an amount of $17,343.90 was paid with respect to such award from funds made available from the sale of German assets which were under the control of the Alien Property Custodian.

On February 27, 1953, an agreement was entered into between the United States and the Federal Republic of Germany (4 U.S.T. 908) making provision for the settlement of the remaining obligations of Germany for awards made by the Mixed Claims Commission on behalf of nationals of the United States. It was agreed that Germany should pay to the United States the total amount of $97,500,000 on behalf of the nationals of the United States, or their successors or assigns, whose Mixed Claims Commission awards remained unsatisfied, such payment to be made in 26 annual installments on April 1 each year at the Federal Reserve Bank of New York for credit in the general account of the Treasurer of the United States. It was provided that in the event of default upon any installment, interest was payable at 3¾ percent per annum until such installment was paid. It was agreed that, as evidence of such obligations, Germany would issue to the United States bonds dated January 1, 1953, maturing and payable serially each year up to and including April 1, 1978. These bonds were to be delivered to the Secretary of the Treasury and thereupon the United States was required to cancel and deliver to Germany certain of the bonds previously issued pursuant to the 1930 agreement, namely, those with maturity dates from September 30, 1931, through March 31, 1943. The United States agreed to apply the payments made by Germany in reduction and satisfaction of the remaining indebtedness of Germany in respect of awards of the Mixed Claims Commission made on behalf of nationals of the United States. Neither these bonds nor the bonds issued pursuant to the 1930 agreement were issued with, or ever had, interest coupons attached.

As of January 1, 1954, the 85-percent interest owned by the petitioner, Wagner, and Wilkens in the Lucy Manufacturing Company award consisted of unpaid principal in the amount of $55,479.05 and interest in the amount of $77,126.84. On June 7, 1954, an amount of $3,663.52 was credited by the Bureau of Accounts, United States Treasury Department, with respect to such 85-percent interest in such

award. The statement of account rendered by the Bureau of Accounts reflected such payment as being 4.75 percent of the interest then due in the amount of $77,126.84, reducing the interest due by that amount. The Bureau of Accounts paid such amount, less, however, one-half of 1 percent as reimbursement for expenses.

On June 7, 1955, an amount of $4,521.42 was credited by the Bureau of Accounts with respect to such 85-percent interest in such award. The statement of account rendered by the Bureau of Accounts reflected such payment as being 6 percent of the interest then due in the amount of $75,357.07, reducing the interest due by that amount. The Bureau of Accounts paid such amount, less the one-half of 1-percent charge.

It was the practice of the Bureau of Accounts to advise all award-holders or assignees thereof when a distribution was about to be made, furnishing an affidavit form (Form 5MC) to be executed by the claimant as a prerequisite to payment. Therein the applicant was required to state whether there had been any change of circumstances affecting his right to receive additional payments on account of the award. In the event of an application for payment pursuant to an assignment of an award the applicant was required to fill out a supplement to the application for payment, showing the capacity of the applicant (as for example, as assignee), and it was required that there be attached evidence sufficient to prove the authority of the claimant and his interest in the award. It was provided that in the case of an assignment, the furnishing of the instrument of assignment would generally be sufficient.

At all times up to and including the years here in question payments with respect to the 85-percent interest in the award were made by the Bureau of Accounts to Frederick J. Wilkens since the assignment which had been furnished to the Bureau showed only him as the assignee. By letter of November 12, 1952, he addressed a letter to such Bureau advising that he was holding this interest in trust for himself, Wagner, and the petitioner in equal amounts, and inquired whether there was any method or procedure whereby an assignment might be made on the books of the Bureau in order that payments might be made directly to each of the three holders of the 85-percent interest. On November 26, 1952, the Bureau of Accounts acknowledged Wilkens' letter and stated that the request was receiving the attention of the legal division, but no further answer was made by the Bureau. On June 27, 1955, Wilkens again addressed a letter to the Bureau of Accounts requesting that the payments to be made on the 85-percent interest be divided into three equal parts and made payable to himself, Wagner, and the petitioner. In such letter, he stated:

I hereby request, authorize and direct that the aforesaid three-way split-up and payment on the 85% interest be made effective immediately, and that this authorization remain on file and be irrevocable.

By letter of July 25, 1955, the Treasury Department, Fiscal Service, acknowledged Wilkens' letter of June 27, 1955, and therein stated:

It is assumed that you intend this letter to have the effect of an assignment and, in the circumstances, the Treasury Department is willing to regard it as such and will place it on file for consideration at the time the next distribution is made on account of these awards. Before any payment may be made pursuant to this assignment, however, it will be necessary for each of the three assignees to execute a supplemental application for payment on the enclosed form.

On October 23, 1957, the petitioner sold his interest in the 85-percent interest in the Lucy Manufacturing Company award for $11,392.05. In the confirmation of sale the purchaser made the notation "Subject to Treasury Dept final clearance of assignment." It has been stipulated that this meant that the purchaser would wait to pay the purchase price to petitioner until it was determined that he had true title to transfer.

The petitioner's share of the payments made on June 7, 1954, and June 7, 1955, were $1,215.07 and $1,499.60, respectively. He reported such amounts in his 1954 and 1955 Federal income tax returns as long-term capital gains. The respondent determined that such amounts constituted ordinary income.

OPINION.

The petitioner contends that the amounts of $1,215.07 and $1,499.60 received by him in the taxable years 1954 and 1955, respectively, from the Bureau of Accounts, Treasury Department, pursuant to his interest in the Mixed Claims Commission award constitute capital gain, rather than ordinary income as determined by the respondent. He relies upon section 1232 of the Internal Revenue Code of 1954.[1] For the purpose of a proper understanding of the facts, we have, in the Findings of Fact, included summaries of the pertinent provisions of the agreements entered into between the United States and Germany with respect to the payment of awards of the Mixed Claims Commission and the pertinent provisions of the Settlement of War Claims Act of 1928 as amended.

---

[1] Section 1232 of the Internal Revenue Code of 1954 provides in part:

(a) GENERAL RULE.—For purposes of this subtitle, in the case of bonds, debentures, notes, or certificates or other evidences of indebtedness, which are capital assets in the hands of the taxpayer, and which are issued by any corporation, or government or political subdivision thereof—

(1) RETIREMENT.—Amounts received by the holder on retirement of such bonds or other evidences of indebtedness shall be considered as amounts received in exchange therefor (except that in the case of bonds or other evidences of indebtedness issued before January 1, 1955, this paragraph shall apply only to those issued with interest coupons or in registered form, or to those in such form on March 1, 1954).

The petitioner's position is that when he acquired his interest in the award he acquired a capital asset which included not only the interest in the award itself, but also an interest in the bonds issued by Germany to the United States pursuant to the 1930 agreement between the two Governments, and that later he acquired an interest in 26 bonds with a total face value of $97,500,000 issued by Germany pursuant to the 1953 agreement between the two Governments in exchange for the defaulted bonds under the prior agreement. He claims that both the award and the bonds constitute "other evidences of indebtedness" issued by a government or political subdivision thereof within the meaning of section 1232 and that both are in registered form within the meaning of the statute. He therefore contends that the amounts which he received should be considered as being in retirement of the type of evidences of indebtedness referred to in section 1232 and therefore long-term capital gain.

The respondent argues, among other things, that the payments in question were in reality payments of interest on the award and that as such they must be treated as ordinary income. The Bureau of Accounts of the Treasury Department designated these payments as payments of interest which reduced the interest accumulated up to the times of payment. The petitioner contends that inasmuch as the total payments which he had received pursuant to the award, including the payments in question (a total of about $8,500), did not aggregate as much as his share of the principal amount of the award plus accumulated unpaid interest at the time of purchase (a total of about $39,500), the payments in question should not be treated as interest income, but, rather, should be treated as payment of the obligation which he purchased, which was a capital asset. He cites *Estate of Hamilton C. Rickaby*, 27 T.C. 886, and *Campbell* v. *Sailer*, (C.A. 5) 224 F. 2d 641, affirming a District Court decision. In each of those cases it clearly appeared that the amounts in question constituted payments of interest which had accrued prior to the time of purchase "flat" by the respective taxpayers of bonds or notes, and it was held that such payments were not to be treated as ordinary income but as capital gain, since the right to receive such interest, which the taxpayer had purchased, was a capital asset.[2] On the other hand, it has been held that payments of interest which accrued after the purchase of bonds or notes "flat" constitute ordinary income. See *Allen Tobey*, 26 T.C. 610; *National City Lines, Inc.* v. *United States*, 197 F. 2d 754; and *Adrian & James, Inc.*, 4 T.C. 708.

In the instant case the Bureau of Accounts treated the payments made in 1954 and 1955 as being in reduction of the total accumulated

---

[2] It should be pointed out that although in those cases there were no sales or exchanges, the bonds or notes were issued with coupons attached or in registered form and met the requirements of section 117(f), I.R.C. 1939, predecessor of section 1232, I.R.C. 1954.

unpaid interest, without designation as to whether the payments were to be applied in satisfaction of any interest accrued or accumulated for any period prior to the time the petitioner acquired his interest in the award. We think that it is unnecessary to decide whether the payments constituted interest accrued after the petitioner purchased his interest in the award since, in our opinion, even if they constituted payments of the principal amount of the award or of interest which had accrued and was unpaid at the time the petitioner purchased his interest, they must be considered as ordinary income.

Section 1232(a)(1) of the Internal Revenue Code of 1954 has reference to bonds, debentures, notes, or certificates or other evidences of indebtedness issued by a corporation or government or political subdivision thereof with interest coupons or in registered form. Here the payments in question were payments made pursuant to awards of the Mixed Claims Commission representing the liability of Germany for damages or losses resulting from World War I. As such they do not partake of the nature of evidences of indebtedness referred to in the statute. It cannot be said that Germany, as the debtor, "issued" such awards.

Among the several arguments advanced by the petitioner are these: That the Government of the United States acted as agent or alter ego of the German Government in making payment of the awards; that the awards were akin to "certificates," indicating the extent of the awardholder's interest in the bonds issued by the German Government to the United States; that the Bureau of Accounts required "registration" of the awards; and that as payments were made by the Bureau of Accounts they constituted payment of the individual awardholder's interest in such bonds. Suffice it to say that we think it clear that the United States was not acting as agent or alter ego of the German Government. It was acting, in its governmental capacity, on behalf of all the awardholders in receiving aggregate payments from Germany and making proper disbursement thereof in accord with the awards of the Mixed Claims Commission. Accordingly, it cannot be said that any procedure which the Bureau of Accounts set up for payment was done as agent of the German Government.[3] We also think it clear that payments made by the Bureau of Accounts to awardholders may not properly be considered as payment of the bonds which were issued by Germany. Such bonds were not issued to the award-

[3] It may be stated that in any event the requirement of the Bureau of Accounts would not appear to constitute "registration" within the meaning of the statute. The term "in registered form" as used in the statute has reference to those evidences of indebtedness title to which cannot be transferred without registration. See *Gerard v. Helvering*, (C.A. 2) 120 F. 2d 235, affirming 40 B.T.A. 64; *Victor A. Miller*, 32 T.C. 954, reversed on other issues (C.A. 10) 285 F. 2d 843; and *Toye v. United States*, (E.D. La.) 157 F. Supp. 123. The requirement of the Bureau of Accounts, pursuant to the provisions of the Settlement of War Claims Act of 1928 as amended, presupposes a transfer of title, and the requirement is that proof of the transfer be furnished prior to payment.

holders, but were issued to the United States as obligee and evidenced the obligation of Germany to pay to the Government of the United States an aggregate amount in settlement of all awards. The fact that these bonds were issued to the Government of the United States does not alter the fact that the payments which the awardholders actually received were payments pursuant to the award.[4] Such payments received by awardholders were not in retirement of any bonds issued by the German Government to them.

Since, as we have concluded, the payments in question were not payments in retirement of any evidence of indebtedness of any government or political subdivision thereof in registered form, and since there was no sale by the petitioner of his interest in the award, it follows that the amounts received may not be considered as capital gain. See *Edna S. Ullman*, 34 T.C. 1107. The determination of the respondent is approved.

*Decision will be entered for the respondent.*

---

[4] Wilkens testified that the payments made to the petitioner in 1954 and 1955 were made out of installments No. 2 and 3 paid by the German Government on April 1, 1954, and April 1, 1955, respectively, and it may be that these installments were the source, in whole or in part, of the funds used by the Bureau of Accounts to make the payments. However this does not mean that the amounts received by the petitioner are themselves to be considered as being payments on retirement of the bonds issued by the German Government to the United States.