MARY TIGHE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63867. Filed December 23, 1959.

*John R. Zillmer, Esq.,* for the petitioner.
*Delman H. Eure, Esq.,* for the respondent.

#### OPINION.

DRENNEN, *Judge:* Respondent determined a deficiency in petitioner's income tax for the year 1952 in the amount of $1,947.56.

The issues for decision are (1) whether certain payments, or any part thereof, received by petitioner in 1952 in settlement of a lawsuit instituted by her to collect amounts allegedly due under a contract executed by her deceased husband and a person with whom he was associated in the practice of law prior to his death constitute taxable income, and (2) the extent to which legal fees and expenses paid by petitioner to the attorneys who represented her in this suit are deductible.

All the facts were stipulated and the stipulation of facts is incorporated herein by this reference.

Mary Tighe, petitioner, resides in Milwaukee, Wisconsin. She filed an individual Federal income tax return for the calendar year 1952 on a cash basis with the district director of internal revenue at Milwaukee, Wisconsin.

Petitioner's deceased husband, Alvin Tighe, hereafter referred to as Tighe, was an attorney licensed to practice law in the State of Wisconsin. He was engaged in the practice of law with Leon B. Lamfrom from 1913 until his death on January 28, 1931, under the firm name of Lamfrom and Tighe, later known as Lamfrom, Tighe, Engelhard & Peck, hereafter sometimes referred to as the firm.

On June 11, 1929, Lamfrom and Tighe entered into an agreement which contained the following principal provisions in paragraphs 5 and 6, respectively:

[5] LEON B. LAMFROM agrees that, in case of the death of ALVIN TIGHE, there shall be paid to MARY TIGHE, the wife of said ALVIN TIGHE, the sum of Two Hundred ($200.00) Dollars a month, out of profits, for a period of Five (5) years from the date of the death of said ALVIN TIGHE.

[6] The parties hereto agree, also, that in case of the death of said LEON B. LAMFROM, that ALVIN TIGHE will make such adjustments of the interests of LEON B. LAMFROM in pending cases and the assets of LAMFROM, TIGHE, ENGELHARD & PECK, as shall be fair and reasonable, as representing the share of said LEON B. LAMFROM in said cases and said assets, and pay the same to BEATRICE R. LAMFROM, if she be living, and, in case she be not living at said time, to THERESE E. LAMFROM, daughter of LEON B. LAMFROM, and LEON B. LAMFROM makes such agreement, in case of the death of ALVIN TIGHE, to so adjust the interests of said ALVIN TIGHE with his wife MARY TIGHE.

Tighe died on January 28, 1931, leaving petitioner as his widow and sole heir at law. His estate was insolvent. No Federal estate tax return was filed or required to be filed by the estate.

On December 31, 1920, Tighe put $750 into the firm and on May 18, 1929, an additional $1,500. Tighe also put furniture costing $597.60 into the firm at some undesignated time.

In 1932, Leon B. Lamfrom paid $905.54 to Tighe's estate, allegedly being the balance due on Tighe's investment in the firm ($2,250)

after making certain credits thereto for obligations of Tighe paid by Lamfrom.

The law firm of Lamfrom, Tighe, Engelhard & Peck made payments to petitioner totaling $4,635.41 in the years 1931 through 1947 toward the obligation set forth in paragraph 5 of the agreement of June 11, 1929. Neither Lamfrom nor the firm made any payments to petitioner toward the obligation set forth in paragraph 6 of that agreement until September 15, 1952. The net profits of the firm were between $13,923.19 and $34,911.34 in each of the years 1931 through 1949.

Petitioner instituted suit against Leon B. Lamfrom in the Circuit Court of Milwaukee County, Wisconsin, on May 25, 1949, to recover amounts due under the agreement of June 11, 1929, more specifically the sum of $7,364.59 as the balance due under paragraph 5 of the agreement, and an unknown amount representing the value of Tighe's interest in the "pending cases" and "assets" of the firm at the time of his death. The petition alleged that Lamfrom and Tighe had beeen partners in the practice of law from December 31, 1920, until the time of Tighe's death.

Lamfrom filed an answer in that suit wherein, among other things, he denied that he and Tighe had ever engaged in the practice of law as partners and that Tighe had any interest in cases pending in the firm at the time of his death; and further alleged that by certain credits and payments he had fully accounted for any interest Tighe had in the assets of the firm, and had also paid to plaintiff in periodic payments over the years an amount totaling $11,775 of the total sum of $12,000 due under paragraph 5 of the 1929 agreement.

On September 3, 1952, petitioner made an offer to Lamfrom to settle her lawsuit against him for the lump sum of $12,500. On September 10, 1952, Lamfrom orally accepted petitioner's offer, and on September 15, 1952, a settlement agreement which had been previously drafted and signed by Lamfrom was first presented to petitioner by Lamfrom. Petitioner signed the agreement and thereupon received a check of Lamfrom, Tighe, Engelhard & Peck in the amount of $12,500.08. The settlement agreement, which was dated August 25, 1952, consisted in part of the following paragraphs (which are the only parts pertinent here):

1. Leon B. Lamfrom shall and does herewith pay to Mary Tighe, and Mary Tighe shall and does hereby receive, $8,285.97 in full payment and discharge of her claim based on the 5th paragraph of said agreement of June 11, 1929, of which payment $6,678.46 represents the balance of monthly payments under said agreement, and $1,607.51 represents interest to and including August 24, 1952.

2. Leon B. Lamfrom shall and does herewith pay to Mary Tighe, and Mary Tighe shall and does hereby receive, $4,214.11 in full payment and discharge of her claim based on the 6th paragraph of said agreement of June 11, 1929,

of which payment $1,950 represents the "interests" of Alvin Tighe in cases pending on the date of his death, and $2,264.11 represents interest on said $1,950.00 to and including August 24, 1952.

\* \* \* \* \* \* \*

4. Payment by Leon B. Lamfrom to Mary Tighe of said amounts of $8,285.97 and $4,214.11 shall and does operate as a complete discharge of any and all obligations of Leon B. Lamfrom under said agreement dated June 11, 1929.

Petitioner's lawsuit against Lamfrom was then dismissed.

In her 1952 Federal income tax return, petitioner reported $3,871.62 of the sum received by her in settlement of the lawsuit as interest income received from Lamfrom, Tighe, Engelhard & Peck. She did not report any part of the remaining $8,628.46 received in the settlement.

On September 16, 1952, petitioner paid her attorneys $4,191.58 in attorneys' fees and expenses for services rendered with regard to her claim against Lamfrom. In her 1952 return she deducted $4,054.25 of said attorneys' fees and expenses as a miscellaneous expense.

In his notice of deficiency respondent determined that an additional $7,678.46 of the $12,500.08 received in the settlement was taxable as ordinary income to petitioner under sections 22(a) and/or 126, I.R.C. 1939, and also disallowed as a deduction $308.11 of the legal fees and expenses claimed.

Respondent filed a motion to amend his answer to include in taxable income the remaining $950 of the $12,500.08 petitioner received in settlement, which motion was made for the first time after the case had been submitted to the Court and after petitioner's original brief had been filed, which motion, on objections by petitioner, was denied.

The primary question for our consideration is whether $7,678.46 of the unreported portion of the $12,500.08 received by petitioner in 1952 in settlement of her lawsuit against Lamfrom, or any part thereof, is taxable to petitioner in the year 1952.

Section 22(a), I.R.C. 1939, defines gross income as including "gains or profits and income derived from any source whatever." Whether payments received by the estate or beneficiaries of a deceased partner from the surviving partners under a partnership agreement fall within this broad definition of gross income depends upon the nature of the payments, which can be determined only by examining the terms of the agreement in the light of the circumstances of the particular case. If the payments are for the purchase of the deceased partner's interest in the partnership, they are taxable to the recipient only to the extent that they exceed the basis of the partnership interest in decedent's estate. On the other hand, to the extent that the payments received do not represent the pur-

chase price of the deceased partner's capital interest in the partnership, but instead represent a share of the partnership income as such, they can be taxable income, *Bull* v. *United States*, 295 U.S. 247; *Gussie K. Barth*, 35 B.T.A. 546; *Charles F. Coates*, 7 T.C. 125; *Sidney Hess*, 12 T.C. 773; *Carol F. Hall*, 19 T.C. 445, unless specifically excluded from gross income or exempt from tax by some provision of law.

The agreement of June 11, 1929, between Lamfrom and Tighe, as we interpret it, was a reciprocal agreement between two partners or associates in the practice of law to (1) pay to the named beneficiary of the first to die, out of profits of the firm, a specified amount per month for a period of 5 years, under the fourth and fifth paragraphs of the agreement, and (2) to pay to the said beneficiary a reasonable but unspecified amount as representing the decedent's share in pending cases and assets of the firm, under the sixth paragraph of the agreement. The sixth paragraph could be interpreted to be an agreement to purchase the decedent's interest in the assets of the firm and to the extent that any of the payments here involved represent a payment on that obligation, it would be taxable as capital gain. But the remaining obligations in the agreement were to pay over to the decedent's beneficiary (a) his share of the fees earned but not yet received from cases then pending in the firm and (b) a specified amount out of future income not yet earned by the firm. The amounts received in payment of decedent's interest in pending cases would be income with respect to the decedent and taxable to him as ordinary income under the principle enunciated in *Bull* v. *United States*, *supra*, unless section 126, I.R.C. 1939, makes it taxable to the beneficiary. The obligations to be paid out of future profits of the firm vested in the beneficiaries a contractual right to a share of the profits, as profits, and payments received thereunder are taxable to the recipient as ordinary income. *Bull* v. *United States*, *supra*; *Gussie K. Barth*, *supra*. Cf. *Charles F. Coates*, *supra*; *Sidney Hess*, *supra*; *Carol F. Hall*, *supra*.

Petitioner argues that the amount she received in settlement of her suit based on the agreement of June 11, 1929, or at least a part thereof, is nontaxable under five different theories. We will consider each of these theories briefly because if that part of the payment representing the balance of the monthly payments due under the fifth paragraph of the 1929 agreement was not excludible from gross income under at least one of these theories, we perceive no reason why it would not be taxable to petitioner in 1952. *Gussie K. Barth*, *supra*. Petitioner's first three theories are that the payment received represented, in part at least, a return of capital.

The first argument is that the sum of $2,847.60 represented a return of Tighe's investment in the firm, being the $750 he put into

the firm in 1920, the $1,500 in 1929, and the furniture costing $597.60, and that this interest in the firm had a value of that much on the date of Tighe's death and, under section 113(a)(5), I.R.C. 1939, had a basis in petitioner's hands of $2,847.60. To accept this argument we would have to read something into the agreement of June 11, 1929, that is not there, and also ignore the plain language of the settlement agreement under which the payment was received. The 1929 agreement made no provision for return of Tighe's investment in the firm—it simply provided for payment to petitioner of $200 per month, out of profit, for 5 years, and that Lamfrom would make such adjustments of the interests of Tighe in pending cases and assets of the firm as should be reasonable, as representing the share of Tighe in said cases and assets, and pay the same to his wife. While petitioner might be entitled to some basis for any amount paid to her for Tighe's interest in physical assets of the firm, the record is entirely devoid of any evidence as to what, if anything, those assets consisted of and what their fair market value would have been on the date of Tighe's death.

Furthermore, the settlement agreement specifies that $8,285.97 of the payments was in payment of petitioner's claim based on paragraph 5 of the agreement of 1929, $6,678.46 representing the balance of monthly payments and $1,607.51 representing interest thereon, and that $4,214.11 was in payment of petitioner's claim based on paragraph 6 of the agreement of 1929, $1,950 representing the interest of Tighe in cases pending on the date of his death, and $2,264.11 representing interest thereon. No amount was specified for Tighe's interest or investment in the firm or its assets. Petitioner claims that she made a lump-sum settlement and should not be bound by the terms of the settlement agreement drawn by Lamfrom. We need not discuss the legal merits of this argument because there is no evidence that the payment was for anything other than as specified in the settlement agreement; and petitioner acted pursuant thereto in reporting as interest income in 1952 the amounts specified as interest in the agreement.

Even if it could be established that a part of the settlement payment was for Tighe's interest in the firm which petitioner inherited on his death, there is no evidence of the value of that interest at the time of Tighe's death from which we could determine her basis in that interest. We reject petitioner's first theory.

Petitioner's second theory is that her right to receive $200 per month was a contract right that she inherited from her husband, that that contract right had a value at the time of Tighe's death, which value she took as her basis in the contract right, and that she is entitled to offset that basis against the settlement payment received. She also claims that the commuted value of the right to

receive $7,364.59 (being the difference between the $12,000 in monthly payments called for and the amount of $4,635.41 paid to her prior to 1952) over a 5-year period represents the value of the contract right at the time of her husband's death, and consequently her basis. She relies primarily on *May D. Hatch*, 14 T.C. 237, affirmed in part and reversed in part 190 F. 2d 254 (C.A. 2).

The *Hatch* case is distinguishable on the facts and is not controlling. There petitioner's husband made a contract with his corporate employer to pay him or his estate $30,000 per year for 10 years after he either terminated his employment in an executive capacity or died. Both this Court and the Court of Appeals found that petitioner acquired as legatee of her husband's estate the contract and rights thereunder and that the payments received thereunder represented realization on the contract, so she was entitled to offset the value thereof as determined for estate tax purposes against the payments received. The contract there was a fixed obligation of a corporation to pay a definite amount regardless of profits, and was thus an asset of decedent's estate with an ascertainable value. The agreement here involved is a promise to have paid *to petitioner*, not Tighe's estate, out of profits of the firm, the sum of $200 per month for 5 years. This agreement is more nearly comparable to the partnership agreement involved in *Bull* v. *United States*, *supra*, and *Gussie K. Barth*, *supra*, wherein the courts held that payments to be made out of subsequent profits of the partnership were not corpus of the deceased partner's estate but income to the estate or the beneficiaries receiving them. See also *Sidney Hess*, *supra; Charles F. Coates*, *supra*.

In addition, there is no evidence in this record upon which we could determine the fair market value of this contract right at the time of Tighe's death, and this theory of petitioner would be of no value to her even if it were sound. It is obvious that discounting the value of the right to receive $200 per month for 5 years is not sufficient to establish the value of this contract right at the time of Tighe's death. There were too many uncertainties that the payments would be made. There was no assurance that either Lamfrom or the firm would continue in business after Tighe's death, or that there would be any profits, or that petitioner would live for 5 years. There is no adequate proof that petitioner had any remaining basis to offset against the payment received even if she were entitled to do so.

Petitioner's next contention is that the discounted value of the $7,364.59 is a return of capital from the sale of goodwill. Here again petitioner asks us to enter into the realm of pure speculation to reach a conclusion entirely unsupported by evidence and which would be inconsistent with what evidence we do have to go on. The agree-

ment of 1929 makes no mention of goodwill, we have no evidence that either Lamfrom or Tighe considered that there was any goodwill, and in fact Lamfrom denied it in his answer filed in petitioner's suit against him in 1949, no evidence of the value thereof if any existed, and the payments provided in paragraph 5 of the 1929 agreement do not purport to be for the purchase of any interest in the firm or its assets. And the settlement agreement specified that the payment was in payment of the balance of the monthly payments due and for Tighe's interest in cases pending. We cannot read something into these agreements which is not there, particularly where there is no evidence that it was even considered by the parties. *Charles F. Coates, supra; James Wesley McAfee*, 9 T.C. 720.

Petitioner's fourth theory is that paragraph 5 of the 1929 agreement was nothing more than a life insurance agreement between Lamfrom and Tighe, and that $7,364.59 of the settlement payment, being the unpaid portion of the $12,000 due petitioner under paragraph 5, was received by her "under a life insurance contract paid by reason of the death of the insured" and is thus excluded from gross income under section 22(b)(1)(A), I.R.C. 1939. While this Court and other courts have recognized that to come within the purview of sections 22(b)(1)(A) and 811(g), I.R.C. 1939, an insurance agreement need not be in the form of the standard life insurance contract, see *Commissioner* v. *Treganowan*, 183 F. 2d 288 (C.A. 2), reversing 13 T.C. 159, certiorari denied 340 U.S. 853, and *Estate of Clarence L. Moyer*, 32 T.C. 515, the courts have also recognized that to come within the meaning of those sections, the agreement or contract must possess the basic characteristics of insurance. *Helvering* v. *Le Gierse*, 312 U.S. 531. In our opinion paragraph 5 of this agreement contains few, if any, of the characteristics of a life insurance contract within the contemplation of section 22(b)(1)(A).

As said in the *Le Gierse* case: "Historically and commonly, insurance involves risk-shifting and risk-distributing." This involves the payment of premiums or assessments by a number of individuals into a common fund out of which the payor's estate or beneficiaries will be paid a certain amount upon his death regardless of whether the amount is more or less than decedent has paid into the fund. Under the agreement before us, neither party paid any premiums or assessments, there was no common fund out of which any amount certain would be paid on the death of either party, and there were only two individuals involved. There was not even any risk involved because payments were to be made only out of profits. The payments received by petitioner under paragraph 5 of the 1929 agreement were not received "under a life insurance contract" so as to be

excludible from gross income under section 22(b)(1)(A), I.R.C. 1939.

Petitioner's final argument is that $5,000 of the payment received under paragraph 5 of the 1929 agreement is exempt under section 22(b)(1)(B), I.R.C. 1939, as a payment received "under a contract of an employer providing for the payment of such amounts to the beneficiaries of an employee, paid by reason of the death of the employee." It is needless to point out that several of the theories advanced by petitioner are inconsistent with each other, but it is worthy of note that this theory is based on an assertion which is inconsistent with an allegation contained in her complaint filed against Lamfrom in the suit out of which this settlement arose— being that Tighe was an employee of Lamfrom's rather than his partner. In her complaint she alleged that Lamfrom and Tighe were partners.

It is clear that to come within this provision of the Code there must have existed an employer-employee relationship between the decedent and the person required to make the payments. See Regs. 118, sec. 39.22(b)(1)-2(d)(1). We have no evidence from which we can determine the exact nature of the relationship existing between Tighe and Lamfrom, other than petitioner's allegation mentioned above that they were partners, and a stipulation between the parties that Lamfrom regarded Tighe as an employee. However, it seems clear from the 1929 agreement that the payments to be made to Tighe were not based on an employer-employee relationship. It would be most unusual and useless for an employee to agree that upon the death of the employer a certain amount per month would be paid to the employer's wife out of profits of the employer's firm. Yet this agreement of 1929 was entirely reciprocal as between Lamfrom and Tighe, except as to the amounts to be paid to the respective wives. The agreement also recognized Tighe's interest in pending cases, which is more indicative of at least a loose partner-ship or office-sharing arrangement than of an employer-employee relationship.

Without better evidence we cannot find that any part of these payments was received under a contract of an employer to provide payments to the beneficiaries of an employee by reason of the death of the employee within the contemplation of section 22(b)(1)(B). In passing it might also be noted that if the payments of $200 per month qualified under that section, petitioner had already received $4,635.41 under this provision prior to the payments here involved. We have not considered whether section 22(b)(1)(B), which was first enacted in 1951, would be applicable to payments received by reason of the death of a person who died many years prior to the

effective date of the law, because it was not argued by either party and is not necessary for our decision on this point.

We conclude that respondent did not err in including in petitioner's taxable income for the year 1952 the amount, or portion thereof, she received as representing the balance due under paragraph 5 of the 1929 agreement.

The situation with respect to the $1,950 paid to petitioner for Tighe's interest in cases pending on the date of his death is different from the situation with respect to payments received for profits earned after his death. As heretofore noted, income earned prior to death but not received until after death may be included in the gross income of the decedent for the period ending with his death and may also be included as corpus in his estate, depending on whether such income is properly accruable at the date of death. However, the older cases held that such income was not taxable as income to the estate or the beneficiary who received the cash payment, because it was corpus of the estate and could not be taxed as both corpus and income. *George Nichols et al* v. *United States*, 64 Ct. Cl. 241 (1927). Therefore, the amount of $1,950 is not taxable to petitioner unless it is taxable to her under section 126, I.R.C. 1939.

Section 126, which was first enacted as section 134(e) of the Revenue Act of 1942, provides that items of gross income with respect to a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income for the taxable year when received, of (A) the estate of the decedent or (B) the person who receives it, whichever acquires the right to receive it by reason of decedent's death. Petitioner claims that section 126 is not applicable to income received with respect to a decedent who died prior to the effective date thereof. It is not clear from subsection (f) of section 134 of the Revenue Act of 1942 whether section 126 of the Code, enacted by subsection (e) of section 134, is applicable with respect to all amounts received after December 31, 1942, or only to amounts received with respect to a decedent dying after that date. However, the Report of the Committee on Ways and Means on the Revenue Bill of 1942 (H. Rept. No. 2333, 77th Cong., 2d Sess., p. 87) in discussing the effective date of the new section 126, says:

This latter provision will cover all such persons who have a taxable year in which an amount of income in respect of a decedent dying after December 31, 1942, could be included.

This clearly indicates an intent to make section 126 apply only to amounts received with respect to decedents dying after 1942. Tighe died in 1931.

We are also doubtful that section 126 would be applicable to this income by virtue of the wording of the provision itself under the rationale of *Helvering* v. *Enright*, 312 U.S. 636. The Court there held that the interest of a partner in a law firm in work in progress at the time of his death was accruable as of the date of his death and should therefore properly be includible in his income for the period prior to his death. Of course, the Court was there considering the meaning of "accruable" under section 42, I.R.C. 1939, first enacted in the Revenue Act of 1934, but this reasoning also seems to apply to the situation here. If the interest of the deceased partner *was* "properly includible in respect of the taxable period in which falls the date of his [decedent's] death," then section 126 is not applicable to require its inclusion in the income of the decedent's estate, or the person who acquired the right to receive it by reason of decedent's death.

For the above reasons we do not think section 126, I.R.C. 1939, is applicable to the $1,950 received by petitioner for Tighe's interest in cases pending at the time of his death, and we know of no other basis for taxing this amount as income to petitioner. We, therefore, conclude that respondent erred in including this $1,950 of the additional $7,678.46 in petitioner's taxable income.

For some reason unexplained in his notice of deficiency respondent failed to claim that $950 of the settlement figure was taxable income. After the case was submitted on the stipulation of facts and after petitioner had filed her original brief, respondent sought to amend his answer to include this $950 in taxable income. Petitioner strenuously objected to the motion on the grounds, among others, that the stipulation of facts had been prepared on the assumption that the $950 was not in controversy, and that she would not have agreed to the stipulation in the form filed had she known that the $950 was involved—and that if the $950 was to be considered she should be permitted to withdraw the stipulation or submit additional evidence. Inasmuch as respondent was the only one who knew why this amount had been omitted in the notice of deficiency and respondent was in possession of all the facts upon which he made this decision at the time this case was called for hearing but failed to move to amend his answer at that time, we denied respondent's motion. Under Rule 17(*d*), Rules of Practice of the Tax Court of the United States, it is stated: "The Court may at any time during the course of the trial grant a motion of either party to amend its pleadings to conform to the proof in particulars stated at the time by the moving party." We do not think it is within the spirit of this rule to permit a party to amend his pleadings long after the case has been submitted to conform the pleadings to the

proof, when the evidence is fully stipulated before the case is called for trial and no additional evidence is submitted by either party.

With respect to the deductibility of attorneys' fees and expenses, it is stipulated that petitioner paid her attorneys $4,191.58 in 1952 for services rendered with regard to her claim against Lamfrom. She claimed a deduction on her return of only $4,054.25. Respondent disallowed $308.11 of the amount claimed on the ground that the amount paid must be allocated between taxable and nontaxable income. Petitioner assigned error only with respect to the $308.11 disallowed—but on brief claims that the entire $4,191.58 is deductible. We do not know why petitioner claimed only $4,054.25 on her return and no reason is given us why the additional amount should be allowed. However, we are of the opinion that the attorneys' fees and expenses paid by petitioner for services rendered with regard to her claim against Lamfrom must be apportioned between the taxable and nontaxable parts of her recovery and only such portion as is allocable to the taxable part is deductible under section 23(a)(2), I.R.C. 1939. *Helvering* v. *Stormfeltz*, 142 F. 2d 982 (C.A. 8); *Estate of Frederick Cecil Bartholomew*, 4 T.C. 349; *Adelaide D. J. Burgwin*, 31 T.C. 981; Regs. 118, sec. 39.23(a)–15. The amount deductible is that portion of $4,191.58 that $9,600.08 ($12,500.08 – $2,900) is of $12,500.08.

*Decision will be entered under Rule 50.*