EDNA S. ULLMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76740. Filed September 23, 1960.

*Harold M. Baron, Esq.*, for the petitioner.
*Henry T. Nicholas, Esq.*, for the respondent.

### OPINION.

SCOTT, *Judge:* Respondent determined deficiencies in petitioner's income tax for the calendar years 1954, 1955, and 1956, in the amounts of $281.92, $278.01, and $228.31, respectively. The deficiencies resulted from the inclusion by respondent in petitioner's income of amounts received by her in the respective years from the Secretary of Treasury of the United States under an award of the Mixed Claims Commission, United States and Germany (hereinafter referred to as the Mixed Claims Commission), made to the Joseph Ullmann Company, a partnership, which amounts respondent determined consti-

tuted income to petitioner reportable in accordance with sections 61 and 691(a) of the Internal Revenue Code of 1954.

Whether the amounts received by petitioner under the award from the Mixed Claims Commission are includible in whole or in part in her income for the taxable years involved requires a determination of the following issues:

1. Do the amounts paid to petitioner in the taxable years represent a return of capital of the partnership, Joseph Ullmann Company, or interest thereon?

2. If the amounts represent interest payments as to the Joseph Ullmann Company, are they income in respect of a decedent to petitioner and, if so, are the amounts ordinary income or capital gains?

All the facts have been stipulated and are found accordingly.

Petitioner filed her income tax returns for the years 1954, 1955, and 1956 with the district director of internal revenue at Cincinnati, Ohio. The petitioner is the widow of Jacques C. Ullman, who died on November 10, 1953. Jacques C. Ullman was the son of Lilian R. and Emanuel S. Ullmann. Emanuel S. Ullmann died on December 21, 1943, and Lilian R. Ullmann died on August 29, 1946.

In 1928 the Mixed Claims Commission awarded to the Joseph Ullmann Company, a partnership, a principal amount of $237,000 for damages suffered in World War I, plus accrued interest from October 1, 1920, to January 1, 1928, in the amount of $85,936.85, making a total award of principal and interest of $322,936.85. Emanuel S. Ullmann held a 26⅔ per cent interest in the partnership and thus in the award made by the Mixed Claims Commission to the Joseph Ullmann Company. Upon the death of Emanuel, his widow, Lilian R. Ullmann, acquired his interest in the award. Jacques C. Ullman acquired the interest of Lilian R. Ullmann by the terms of her will and by assignment of her executors. Petitioner, as executrix and then as sole residuary legatee of her husband's estate, acquired the interest of Jacques C. Ullman in the award.

Commencing with a payment of $100,000 on August 15, 1928, periodic payments were made at various dates through November 10, 1941, to the partners of the Joseph Ullmann Company or their successors in interest by the Secretary of Treasury on account of the award of the Mixed Claims Commission to the company. A total amount of $264,269.69 had been paid on the award by November 10, 1941. No payments were made on the award from November 10, 1941, until February 10, 1948, when a payment of $7,643.41 was made. On January 12, 1949, a payment of $3,175.82 was made on the award, and on September 17, 1952, a payment of $1,018.31 was made. Jacques was recognized by the Commissioner of Accounts

of the Treasury Department as being entitled to receive 26⅔ per cent of the payments made in 1948, 1949, and 1952. Further payments were made on the award during each of the years 1953 through 1959. During the years 1954, 1955, and 1956 payments in the net amounts of $2,017.09, $1,217.80, and $1,007.53, respectively, were made to petitioner.

All payments made in connection with the award to the Joseph Ullmann Company were made pursuant to the authority of the Settlement of War Claims Act of 1928 (Act of March 10, 1928, ch. 167, 45 Stat. 254) and subsequent amendments thereto, specifically the Act of August 6, 1947 (ch. 506, Pub. L. 375, 80th Cong.). Under the provisions of the Settlement of War Claims Act of 1928, the Secretary of Treasury was authorized to pay (but only out of the German special deposit account created by that Act) the principal of each award certified by the Mixed Claims Commission, plus interest thereon accrued before January 1, 1928, and simple interest at the rate of 5 per cent per annum from January 1, 1928, upon such total amount payable which remained unpaid. Beginning January 1, 1928, the order of priority for payment provided first, for the payment of $100,000 of the amount of the award with accrued interest to January 1, 1928, on all claims which with such accrued interest exceeded $100,000; second, for an additional payment which when aggregated with the $100,000 prior payment would constitute 80 per cent of the amount of the award with interest accrued to January 1, 1928; third, the payment of interest accruing after January 1, 1928; and finally, the payment of any amount remaining unpaid. All amounts paid by the Secretary of Treasury under the award to the Joseph Ullmann Company from August 15, 1928, through November 10, 1941, were designated as payments on principal.

The Act of August 6, 1947, amending the War Claims Act, revised the order of priority of payment giving priority to the payment of accrued interest. All payments made from February 10, 1948, to June 1, 1957, by the Secretary of Treasury on the award to the Joseph Ullmann Company were designated as payments on interest.

On February 27, 1953, the United States of America and the Federal Republic of Germany entered into an agreement entitled "Settlement of Indebtedness of Germany for Awards Made by the Mixed Claims Commission," providing for a total payment of $97,500,000 to the United States in satisfaction of unpaid awards of the Mixed Claims Commission, including accrued interest, in the amount of $104,000,000. This treaty became effective September 16, 1953.

The appraiser designated by the Surrogate's Court of the County of New York to appraise the estate of Jacques C. Ullman, entered his

report determining the fair market value of the award of the Mixed Claims Commission owned by Jacques C. Ullman at the time of his death to be $6,413.

Petitioner's position is that the payments made to her by the Secretary of Treasury pursuant to the award of the Mixed Claims Commission to the Joseph Ullmann Company are a return of capital and not income. Petitioner first contends that the terms of the treaty between the United States and Germany entered into on February 27, 1953 (ratified by the United States Senate on July 13, 1953), in effect merged the principal amount of the award still owing to the Joseph Ullmann Company with the interest thereon, making all subsequent payments a return of capital. Respondent takes the position that the principal amount of the award to the Joseph Ullmann Company of $237,000 had been paid by November 10, 1941, and that any payments subsequent to that date were in satisfacttion of interest accrued on the principal amount.

This award has been the subject of previous litigation in this Court. We held in *Emanuel Solomon Ullmann*, 30 B.T.A. 764, affd. 77 F. 2d 827 (C.A. 2, 1935), certiorari denied 296 U.S. 631, that the taxpayers realized no taxable income on payments made to them by the Secretary of Treasury pursuant to the award of the Mixed Claims Commission until their capital basis for the property covered by the award had been recovered. In *Emanuel Solomon Ullmann*, *supra*, respondent took the position that the original payment should be prorated between the principal sum of $237,000 and the accrued interest of $85,936.85, and the portion applicable to interest included in the taxable income of the taxpayers. On the authority of *James Speyer*, 30 B.T.A. 517, affd. 77 F. 2d 824 (C.A. 2, 1935), certiorari denied 296 U.S. 631, we held that the uncertainty of future payments and the doubt that the awards would ever be paid in full were such that the taxpayers should not be charged with taxable interest income until their basis in the principal of the award had been recovered. The clear corollary of this holding is that when the cost basis covered by the award had been paid in full, subsequent payments would constitute interest. Since the capital basis of the award ($237,000) had been recovered by November 10, 1941, all subsequent payments constitute payments of interest.

There is nothing in the treaty between the United States and Germany, effective in 1953, to change the nature of the award as made by the Mixed Claims Commission or the nature of the payments made by the Secretary of Treasury pursuant thereto. The treaty effected a settlement of the obligation of the German Government to the United States Government with respect to the remaining indebtedness for the awards made by the Mixed Claims Commission and reduced the total amount owing from $104,000,000 to $97,500,000 as of the

effective date of the treaty. It also provided for the payments of this amount in installments over a 26-year period with interest at the rate of 3¾ per cent on any installment or part thereof remaining unpaid after the date such installment became due. The treaty effected a reduction in the overall indebtedness of the German Government to the United States, but did not change the nature of the payments made by the Secretary of Treasury out of the German special deposit account to the recipients thereof. The capital basis of the award having been recovered, the payments made to petitioner during the years 1954, 1955, and 1956 represented interest on the portion of the capital basis of $237,000 of the award which was originally owned by Emanuel S. Ullmann.

Petitioner further contends that since she obtained her interest in the award by bequest from her husband, she is entitled to recover as capital the fair market value of this interest in the hands of her husband at the date of his death, which amount she claims is $6,413, the evaluation placed on her husband's interest in the award by the appraiser of the New York Surrogate's Court. She also contends that any amount received in excess of the $6,413 return of capital would constitute capital gains to her.

Since petitioner received her interest in this award by bequest from her husband, the amounts are a return of capital to the extent of the fair market value of the right to receive these amounts at the date of her husband's death unless such amounts are includible in her gross income as income in respect of a decedent. *Mary Tighe*, 33 T.C. 557 (1959).

Section 691(a)(1) of the Internal Revenue Code of 1954,[1] applicable to the years here involved, provides that all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period (including the amount of all items of gross income in respect of a prior decedent acquired by reason of death of the prior decedent) shall be included when received in the gross income of the estate or person

---

[1] SEC. 691. RECIPIENTS OF INCOME IN RESPECT OF DECEDENTS.

(a) INCLUSION IN GROSS INCOME.—

(1) GENERAL RULE.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period (including the amount of all items of gross income in respect of a prior decedent, if the right to receive such amount was acquired by reason of the death of the prior decedent or by bequest, devise, or inheritance from the prior decedent) shall be included in the gross income, for the taxable year when received, of:

(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;

(B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or

(C) the person who acquires from the decedent the right to receive the amount by bequest, device, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.

who acquires the right to receive such amounts by bequest. Section 691(a)(2)[2] provides that if the right described in paragraph (a)(1) is transferred, there shall be included in the income of the transferor (either the estate or person who receives the right by reason of the death of the decedent) the fair market value of such right at the time the transfer occurs plus any consideration received in excess of such fair market value. It is specifically provided that the term "transfer" shall not include transmission at death.

Section 126(a)(1) of the Internal Revenue Code of 1939,[3] applicable to years prior to 1954, is substantially the same as section 691 (a)(1) of the 1954 Code except that it does not provide for the inclusion of income in respect of prior decedents. Section 126(a)(2) of the 1939 Code[4] is substantially the same as section 691(a)(2) of the 1954 Code except that it does not exclude the transmission at death from the definition of the term "transfer."

Since Emanuel S. Ullmann had, prior to his death on December 21, 1943, received a return of his entire capital investment, any further amounts he would have received would have been income to him. There is no indication that Emanuel reported his income on an accrual basis and even if he had, under the holding in *Emanuel Solomon Ull-*

---

[2] Sec. 691(a)(2). INCOME IN CASE OF SALE, ETC.—If a right, described in paragraph (1), to receive an amount is transferred by the estate of the decedent or a person who received such right by reason of the death of the decedent or by bequest, devise, or inheritance from the decedent, there shall be included in the gross income of the estate or such person, as the case may be, for the taxable period in which the transfer occurs, the fair market value of such right at the time of such transfer plus the amount by which any consideration for the transfer exceeds such fair market value. For purposes of this paragraph, the term "transfer" includes sale, exchange, or other disposition, or the satisfaction of an installment obligation at other than face value, but does not include transmission at death to the estate of the decedent or a transfer to a person pursuant to the right of such person to receive such amount by reason of the death of the decedent or by bequest, devise, or inheritance from the decedent.

[3] SEC. 126. INCOME IN RESPECT OF DECEDENTS.
.(a) INCLUSION IN GROSS INCOME.—
(1) GENERAL RULE.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income, for the taxable year when received, of:
(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;
(B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or
(C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.

[4] Sec. 126(a)(2). INCOME IN CASE OF SALE, ETC.—If a right, described in paragraph (1), to receive an amount is transferred by the estate of the decedent or a person who receives such right by reason of the death of the decedent or by bequest, devise, or inheritance from the decedent, there shall be included in the gross income of the estate or such person, as the case may be, for the taxable period in which the transfer occurs, the fair market value of such right at the time of such transfer plus the amount by which any consideration for the transfer exceeds such fair market value. For the purposes of this paragraph, the term "transfer" includes sale, exchange, or other disposition, but does not include a transfer to a person pursuant to the right of such person to receive such amount by reason of the death of the decedent or by bequest, devise, or inheritance from the decedent.

*mann, supra*, amounts payable on the award from the Mixed Claims Commission were not sufficiently definite to be accrued. Therefore, any accrual of these items would have been required, if at all, solely because of his death which was excepted from accruals under section 42(a) of the 1939 Code [5] applicable at his death. Under these circumstances, any payments which his widow might have received on such award (even though in fact she actually received no payment) would have constituted income in respect of a decedent to her under section 126(a) of the Internal Revenue Code of 1939.

Under section 126(a)(2) of the Internal Revenue Code of 1939 and section 39.126(a)–1(f) of Regulations 118,[6] when the right to receive income in respect of a decedent was transferred by bequest, the fair market value of such right at the time of such disposition was required to be included in the gross income of the testator. Since Lilian bequeathed to Jacques the right to receive the payments on the award, the statute and regulations effective at the date of her death required that her final income tax return include the fair market value of the right to receive such payments. Under section 126(a)(2) of the 1939 Code in effect at the date of Lilian's death, when Jacques obtained the right to payments on the award from the Mixed Claims Commission by bequest from Lilian, he is considered to have received this right by transfer to the same extent as if he had purchased the right from Lilian for its fair market value at the date of her death. It follows that payments he received under the award do not represent "income in respect of a decedent" to him.[7] For the same reason these

---

[5] SEC. 42. PERIOD IN WHICH ITEMS OF GROSS INCOME INCLUDED.

(a) GENERAL RULE.—The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. In the case of the death of a taxpayer whose net income is computed upon the basis of the accrual method of accounting, amounts (except amounts includible in computing a partner's net income under section 182) accrued only by reason of the death of the taxpayer shall not be included in computing net income for the period in which falls the date of the taxpayer's death.

[6] Regs. 118, sec. 39.126(a)–1(f). If the right to receive an amount of income in respect of a decedent is transferred by the estate or the person entitled to such amount by bequest, devise, or inheritance, or by reason of the death of the decedent, the fair market value of such right at the date of the transfer shall be included in the income of the estate or of such person, plus the amount by which any consideration received on such transfer exceeds the fair market value of such right. Thus, upon a sale of such right, the fair market value of the right or the amount received upon the sale, whichever is greater, is included in income. Similarly, if the right to receive the income is disposed of, as by gift or bequest, the fair market value of such right at the time of such disposition must be included in the gross income of the donor, testator, or other transferor. * * *

[7] The record nowhere specifically shows the amounts received by Jacques under the award. Presumably he received 26⅔ per cent of the total payments made on the award during 1948, 1949, and 1952, less the one-half of 1 per cent deduction provided for under the War Claims Act, since the record shows that he was recognized during these years by the Commissioner of Accounts of the Treasury Department as being entitled to receive this percentage of the total payments.

payments would not constitute income in respect of a prior decedent to petitioner.[8]

This requires an answer to the question whether the payments on this award made during 1954, 1955, and 1956 would have constituted income to Jacques had they been received by him as amounts in excess of the fair market value of his mother's interest in the award at the date of her death and, if so, would such payments be "income in respect of a decedent" to petitioner.

Had Jacques purchased the right to receive this income from his mother, amounts received by him in excess of his basis therein would have constituted income to him. *Frances E. Latendresse*, 26 T.C. 318, 326 (1956), affd. 243 F. 2d 577 (C.A. 7, 1957), certiorari denied 355 U.S. 830.

For years governed by the revenue laws prior to the amendment of the 1939 Code by section 134(e) of the Revenue Act of 1942, providing for inclusion in income of income in respect of a decedent, this Court (as the *Latendresse* case shows) has held that amounts received by the estate, legatee, or heir, in excess of the fair market value of the right to receive the income at the date of the decedent's death, constitute income to the recipient. *William P. Blodget, et al.*, 13 B.T.A. 1243 (1928); *Peak v. Commissioner*, 80 F. 2d 761 (C.A. 8, 1936), affirming a Memorandum Opinion of this Court; cf. *Mary Tighe, supra.*

The record does not show the amount of the fair market value of the right to receive payments under the award at the date of Lilian's death. We, therefore, assume, against petitioner's interests, that at the date of Lilian's death the right to receive income under the award had a fair market value less than the amounts received by Jacques on the award from 1948 to the date of his death. Under this assumption, Jacques had received prior to his death a return of his basis in the award and any further payments on the award would have constituted income to him. Under section 691(a) of the 1954 Code, the payments would, therefore, constitute "income in respect of a decedent" to petitioner unless the value thereof was properly includible in Jacques' income for the period in which fell the date of

---

[8] The respondent's regulations provide:

Sec. 1.691(a)–1(c) [Income Tax Regs., I.R.C. 1954] (T.D. 6257, 1957–2 C.B. 342, 344). *Prior decedent.*—The term "income in respect of a decedent" also includes the amount of all items of gross income in respect of a prior decedent, if (1) the right to receive such amount was acquired by the decedent by reason of the death of the prior decedent or by bequest, devise, or inheritance from the prior decedent and if (2) the amount of gross income in respect of the prior decedent was not properly includible in computing the decedent's taxable income for the taxable year ending with the date of his death or for a previous taxable year. * * *

his death or a prior period. *Estate of Thomas F. Remington*, 9 T.C. 99, 107 (1947).

Section 126(a)(2) of the 1939 Code and section 39.126(a)–1(f) of Regulations 118, applicable at the date of Jacques' death, would not have required the inclusion in his income for the period in which fell the date of his death of the fair market value of the right to receive payments on the award since the amounts being received by him were not income in respect of a decedent to him. There is no indication in the record that Jacques reported his income on an accrual basis of accounting but even if he did, no amount would be properly includible in his income for the period in which fell the date of his death or a prior period because of his right to receive payments under the award from the Mixed Claims Commission. Section 42(a) of the 1939 Code, applicable to the year 1953, provides that where a taxpayer is on an accrual basis of accounting, amounts accruable only by reason of the taxpayer's death shall not be included in computing the net income for the period in which falls the date of his death. The payments received by petitioner under the award of the Mixed Claims Commission constituted income in respect of a decedent to her under section 691(a) of the 1954 Code. Cf. *Frances E. Latendresse, supra*.

Petitioner contends that if the payments on the award of the Mixed Claims Commission are income to her, such amounts constitute capital gains. Under section 691(a) of the 1954 Code and the regulations [9] issued pursuant thereto, the income in respect of a decedent has the same character in the hands of the recipient as it would have in the hands of the decedent. The amounts received during the taxable years on the award from the Mixed Claims Commission would have constituted ordinary income to Jacques had they been received by him since such amounts were not received from a sale or exchange of the right to receive payments on this award. *May D. Hatch*, 14 T.C. 237 (1950), reversed on another issue 190 F. 2d 254. It follows that these payments when received by petitioner constituted ordinary income to her.

*Decision will be entered for the respondent.*

---

[9] Sec. 1.691(a)–3(a) [Income Tax Regs., I.R.C. 1954] (T.D. 6257, 1957–2 C.B. 342, 346). CHARACTER OF GROSS INCOME.—The right to receive an amount of income in respect of a decedent shall be treated in the hands of the estate, or by the person entitled to receive such amount by bequest, devise, or inheritance from the decedent or by reason of his death, as if it had been acquired in the transaction by which the decedent (or a prior decedent) acquired such right, and shall be considered as having the same character it would have had if the decedent (or a prior decedent) had lived and received such amount. The provisions of section 1014(a), relating to the basis of property acquired from a decedent, do not apply to these amounts in the hands of the estate and such persons. * * *