KURT ORBAN COMPANY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kurt Orban Co. v. Commissioner
Docket No. 8982-82.
United States Tax Court
T.C. Memo 1987-518; 1987 Tax Ct. Memo LEXIS 558; 54 T.C.M. (CCH) 861; T.C.M. (RIA) 87518; October 5, 1987. *558 Petitioner wholly owned two subsidiaries to which it made payments; it deducted the payments as premiums for insurance coverage provided by the subsidiaries. The subsidiaries did not issue any insurance policies to any third parties during the years in issue. Held: Petitioner's payments to its subsidiaries did not constitute insurance premiums and are not deductible by petitioner (except to the extent that the subsidiaries used the "premiums" to provide insurance from unrelated parties or incurred other expenses in relation to such insurance). Clougherty Packing Co. v. Commissioner,84 T.C. 948 (1985), affd. 811 F.2d 1297 (CA9 1987), followed. Allen Greenberg, for the petitioner. Richard J. Sapinski, *559 for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal corporate income tax against Kurt Orban Company, Inc., for taxable year 1974 [1] in the amount of $ 108,337 and for 1975 in the amount of $ 430,560. After concessions by petitioner, the issue for decision is whether petitioner is entitled to deduct as insurance premiums certain amounts paid to its subsidiaries. FINDINGS OF FACT Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioner's principal place of business was in Wayne, New Jersey. During taxable years 1974 and 1975, petitioner bought and sold steel and steel products. As part of petitioner's business, it bought foreign-produced steel and steel products made primarily in Europe, Japan, and Korea and imported these products into the United States for sale in the domestic market. Petitioner generally bought foreign steel *560 products under contracts with foreign mills whereby the title to and risk of loss on the products passed to petitioner at the time of purchase. Petitioner bore the risk of loss on these products during the ocean voyage and, for substantially all its contracts, also bore the risk of loss until final delivery to the ultimate buyer. Petitioner also bought steel from Nissho Iwai (hereinafter sometimes referred to as "Nissho"), a Japanese concern, under contracts which provided that Nissho was to obtain ocean transit insurance under its own policy and bill petitioner for this insurance. This arrangement was entered into at Nissho's insistence. Before January 2, 1973, petitioner covered the sea voyage from port to port and inland risks of loss associated with the importation of steel products by obtaining Marine Open Cargo policies of insurance [2] through its New York broker, Bleichroeder Bing & Co. (hereinafter sometimes referred to as "BB"), from Commercial Union Assurance Co. of New York (hereinafter sometimes referred to as "CUA"), and from Italia Assicurazoni, S.p.A. (hereinafter sometimes referred to as "Italia"), an Italian company. *561 On January 8, 1973, Claremont Insurance Services, Ltd. (hereinafter sometimes referred to as "Claremont-Zug"), was incorporated in Zug, Switzerland, as a wholly-owned subsidiary of petitioner. Petitioner owned all of Claremont-Zug's issued and outstanding stock through the years in issue. Claremont-Zug maintained its offices under the general supervision of Jacques Ziegler (hereinafter sometimes referred to as "Ziegler"), a Swiss citizen. Ziegler's duties included managing petitioner's telecommunications center in Europe, administering loss prevention procedures and insurance claims in Europe, and managing insurance costs. Loss prevention is concerned with the packaging, transportation, handling, storage, export inspection, and security of cargo. Management of insurance costs includes reducing premiums by such means as saving brokerage commissions and obtaining reinsurance. Ziegler, through Ivira A.G., another Swiss subsidiary of petitioner, [3] coordinated petitioner's European shipping schedules and arranged for vessel space reservations and chartering of vessels. In connection with several chartering arrangements with third parties during 1974 and 1975, Claremont-Zug acted *562 as a disburser of freight costs. As one of the costs was insurance, Claremont-Zug billed the third-party shippers for the ocean marine insurance and, through Italia, arranged for the insurance coverage. Claremont-Zug collected the premiums and remitted them to Italia. Claremont-Zug was not licensed as an insurance company under Swiss law and did not underwrite risks. It did not issue any insurance policies to petitioner or anyone else. [4]
After Claremont-Zug was incorporated, petitioner had BB change the manner in which its insurance declarations [5] were treated. Under the previous system, petitioner submitted *563 its insurance declarations to BB, which forwarded them to CUA; after receiving invoices from CUA, BB prepared premium statements which it sent to petitioner; after receiving statements from BB, petitioner paid BB, which deducted its commissions and remitted the net premiums to CUA. After Claremont-Zug was incorporated, BB billed ocean marine premiums on non-U.S. risks to Claremont-Zug and received payment from Claremont-Zug; for export, domestic inland transit, and warehouse coverage, BB continued to bill petitioner directly and petitioner paid BB directly. In making the arrangement for the revised billing procedures for petitioner's non-U.S. shipments with CUA, Thomas B. Herzfeld (hereinafter sometimes referred to as "Herzfeld"), a principal of BB and the individual who personally took care of petitioner's ocean marine insurance business, was never advised by Ziegler or anyone else on behalf of petitioner that Claremont-Zug was an insurance company. Herzfeld was under the impression at the time that Claremont-Zug was a broker or insurance agency rather than an insurance company. *564 Pursuant to petitioner's request, CUA reissued the then-existing CUA open marine insurance policy and dated it January 2, 1973. The policy named Claremont-Zug as an additional assured and was substantially the same as the policy issued by CUA in June 1972. The 1973 reissued CUA open marine policy was not a reinsurance policy under which CUA would be underwriting as a secondary insurer the risks covered by a primary insurer, i.e., Claremont-Zug. Also, on February 27, 1973, Italia issued a new marine cargo policy "on behalf of Claremont-Zug "for account of" petitioner and various affiliated companies. Because of concern about the possibility of the Swiss government's imposing a tax on operations of foreign-owned corporations, on April 19, 1974, Claremont Insurance Services, Ltd. (hereinafter sometimes referred to as "Claremont-Bermuda"), was incorporated as an "exempt" corporation under the laws of Bermuda and was, during the years in issue, a wholly owned subsidiary of Claremont-Zug. [6] Under its Bermuda charter, Claremont-Bermuda was empowered to conduct business as an insurance company with respect to business outside of Bermuda. (See n. 4, supra, regarding Ziegler's view *565 that such a name would "make it amply clear that [the company does] not engage in underwriting of risks.") Claremont-Bermuda issued an Open Cargo Policy on April 19, 1974, which was stated to cover ocean marine shipments of petitioner and its affiliates and subsidiaries from January 3, 1973. Unlike the CUA and Italia policies, the Claremont-Bermuda policy had no exclusion or franchises [7] and provided for some additional coverages not found in the CUA and Italia policies, such as coverage of "all risks including rust however caused" and adjusting claims based on "insured value" rather than "sound market value". Claremont-Bermuda did not issue any insurance policies to third parties during the years in issue. *566 Claremont-Bermuda was added as an additional named assured to the CUA policy in late 1974. CUA did not know that Claremont-Bermuda was an insurance company. CUA was not reinsuring Claremont-Bermuda. Instead, during the years in issue, CUA reinsured with three other insurance companies the insurance policies CUA had written for petitioner. In the years in issue, Ziegler instructed CUA, Italia, and Nissho to issue their premium bills to Claremont-Bermuda but to mail the bills to Claremont-Zug. Using Claremont-Bermuda stationery, Ziegler (or another representative of Claremont-Zug) then prepared new bills which includes the premium due to Claremont-Bermuda and sent the new bills to petitioner. Petitioner issued checks in payment of the bills, sending the checks to Claremont-Bermuda which paid the CUA, Italia, and Nissho bills. Claremont-Bermuda retained any excess over the amounts paid to CUA, Italia, and Nissho. For taxable years 1974 and 1975, petitioner deducted the amounts listed in table 1 as ocean marine insurance premiums paid to Claremont-Bermuda and Claremont-Zug. Claremont-Zug and Claremont-Bermuda in turn paid the amounts listed in table 1 to CUA, Italia, and *567 Nissho for ocean marine insurance coverage for petitioner. Table 1 Total Paid by Claremont-
Total Paid to Claremont-Zug
Zug and Claremont-Bermuda
Taxable Year
and Claremont-Bermuda
to CUA, Italia, and Nissho
1974
$   751,798
$   430,948
1975
2,441,932
1,263,837
Respondent disallowed, for each of the years, the amount by which the insurance premiums petitioner paid to Claremont-Zug and Claremont-Bermuda exceeded related expenses of the two Claremonts, as shown in table 2. Table 2 Item
Taxable Year
1974
1975
Insurance premiums
$ 751,798
$ 2,441,932
paid by petitioners
Expenses of the two Claremonts
Insurance premiums paid
$ 430,948
$ 1,263,837 Insurance claims paid (net)
15,924
139,457 Administrative expenses
84,343
114,557 Currency losses (gains)
7,755
(518)
Depreciation
1,049
-0-   Interest
629
1,483 540,648
1,518,816
Excess -- disallowed
$ 211,150
$   923,116
* * * Petitioner's payments to Claremont-Zug and Claremont-Bermuda, in excess of the related expenses, were not payments of premiums on insurance. *568 OPINION Respondent contends that the amounts paid to and retained by Claremont-Zug and Claremont-Bermuda in taxable years 1974 and 1975 do not constitute amounts paid for insurance premiums and, therefore, are not deductible as insurance premiums under section 162. [8] Respondent contends that this is so because (1) neither Claremont-Zug nor Claremont-Bermuda engaged in underwriting during the periods in issue, and (2) even if Claremont-Zug and Claremont-Bermuda engaged in underwriting during the years in issue, the arrangements between petitioner and its wholly owned subsidiaries do not shift risks and so do not constitute insurance. Petitioner contends that petitioner's payments to Claremont-Zug for taxable year 1974 are deductible as an ordinary and necessary business expense unrelated to insurance premiums. In making this contention, petitioner concedes that the payments made to and retained by Claremont-Zug from petitioner did not constitute insurance premiums because Claremont-Zug did not issue any insurance policy to petitioner *569 during taxable year 1974. [9] With regard to taxable year 1975, petitioner contends that the payments petitioner made to its wholly owned indirect subsidiary, Claremont-Bermuda, were deductible insurance premiums. In making this contention, petitioner asserts that this Court should overrule our opinion in Clougherty Packing Co. v. Commissioner,84 T.C. 948 (1985), affd. 811 F.2d 1297 (CA9 1987). We agree with respondent's conclusions. Deduction of Insurance Premiums
Under section 162, [10] petitioner is allowed to deduct from gross income all of the ordinary and necessary expenses it paid or incurred in carrying on its trade or business. If the requirements of section 162 *570 are met, payments of insurance premiums are deductible. Sec. 1.162-1(a), Income Tax Regs. However, insurance premiums paid are deductible only if a true insurance exists. Anesthesia Service Medical Group v. Commissioner,85 T.C. 1031, 1038 (1985), affd. 825 F. 2d 241 (CA9 1987); Clougherty Packing Co. v. Commissioner, supra; Carnation Co. v. Commissioner,71 T.C. 400 (1978), affd. 640 F.2d 1010 (CA9 1981). One of the elements of insurance is risk-shifting. Helvering v. Le Gierse,312 U.S. 531, 539-540 (1941); Carnation Co. v. Commissioner,71 T.C. at 410, and cases there cited; Tighe v. Commissioner,33 T.C. 557, 564 (1959). As the Court of Appeals for the Ninth Circuit stated in Clougherty Packing Co. v. Commissioner, 811 F.2d at 1300: Shifting risk entails the transfer of the impact of a potential loss from the insured to the insurer. If the insured has shifted its risk to the insurer, then a loss by or a claim against the insured does not affect it because the loss is offset by the proceeds of an insurance payment. * * *571 * The insurance premium is the cost of providing for the shifting of risk. Payments do not constitute insurance premiums unless they are paid to shift risk away from the taxpayer who seeks to deduct them. Clougherty Packing Co. v. Commissioner,84 T.C. at 958. See Steere Tank Lines, Inc. v. United States,577 F.2d 279 (CA5 1978). The issue of the deductibility of insurance premiums paid to a wholly owned subsidiary has been litigated in a number of cases. See Clougherty Packing Co. v. Commissioner, 811 F.2d at 1298; Humana v. Commissioner,88 T.C. 197, 206-207 (1987). The opinions cited at the indicated pages in Clougherty and Humana uniformly concluded that payments made directly or indirectly by a parent to its captive *572 [11] insurance subsidiary under circumstances such as those present in the instant case are not deductible because the arrangement between the parent and the subsidiary did not accomplish real risk-shifting. 1974
For taxable year 1974, petitioner paid $ 751,798 to Claremont-Zug, which petitioner deducted on its tax return as ocean marine insurance premiums (see table 1, supra). Claremont-Zug spent $ 430,948 to buy such insurance from others. Claremont-Zug also spent $ 109,700 for other purposes (see table 2, supra). Respondent disallowed petitioner's deduction for the remaining $ 211,150 that Claremont-Zug retained. The parties have stipulated, and we have found, that Claremont-Zug (1) was not licensed as an insurance company under Swiss law, (2) did not underwrite risks, and (3) did not issue any insurance policies to petitioner or to anyone else. Respondent has not disallowed petitioner's expenditures that found their way through Claremont-Zug *573 to payments for insurance, or that were used by Claremont-Zug. The disputed payments, the amounts retained by Claremont-Zug, were not paid for insurance. We conclude that the disputed amounts are not deductible by petitioner. In its opening brief, [12] petitioner conceded that any payments its made to Claremont-Zug for taxable year 1974 did not constitute deductible insurance premiums because Claremont-Zug did not issue any insurance policy to petitioner during that taxable year. Rather, petitioner, for the first time on brief asserts that these payments are deductible by petitioner as ordinary and necessary trade or business expenses for insurance services that Claremont-Zug provided, such services being the following: administration of loss prevention procedures, organization of inspection at point of shipment, and negotiation of insurance claim settlements. We will not consider arguments raised for the first time on brief and not appearing in the pleadings or tried by consent (Rule 41(b)(1), Tax Court Rules of Practice & Procedure), when to do so prevents the opposing party *574 from presenting evidence that it might have presented if the issue had been timely raised. E.g., Estate of Rosenberg v. Commissioner,86 T.C. 980, 984 n. 1 (1986), affd. without published opinion 812 F.2d 1401 (CA4 1987); Markwardt v. Commissioner,64 T.C. 989, 997-998 (1975); Molbreak v. Commissioner,61 T.C. 381, 393 (1973), affd. 509 F.2d 616 (CA7 1975). Petitioner in its pleading and at trial stated that the only issue before this Court was whether the payments made by petitioner to Claremont-Zug and Claremont-Bermuda are deductible as insurance premiums. [13]
*575 We will not consider this new issue. [14]
We hold for respondent as to 1974. 1975
For taxable year 1975, petitioner paid $ 2,441,932 to Claremont-Zug and Claremont-Bermuda, which petitioner deducted on its tax return as ocean marine insurance premiums (see table 1, supra). More than 2-1/2 months into the taxable year, Claremont-Bermuda issued an insurance policy to cover only petitioner and its related and affiliated subsidiaries. Neither Claremont-Bermuda nor Claremont-Zug issued any insurance policies to any third parties during taxable year 1975. Petitioner's payments did not constitute payments of insurance premiums because no true insurance arrangement existed between petitioner ("the insured") and Claremont-Bermuda ("the insurer"). The arrangement *576 between petitioner and Claremont-Bermuda did not result in a shifting of risk from petitioner to Claremont-Bermuda, petitioner's wholly owned subsidiary. Petitioner's insurance arrangement is similar to the arrangement of the taxpayer in Clougherty Packing Co. v. Commissioner, supra.
In Clougherty, the taxpayer attempted to deduct as workers' compensation insurance premiums amounts it paid to Fremont, an unrelated insurance carrier, which reinsured 92 percent of the risk with Lombardy, the taxpayer's wholly owned subsidiary. In denying the taxpayer a deduction for the 92-percent portion of the premiums which were ceded to its wholly owned subsidiary, we stated as follows (84 T.C. at 958-959): The agreement by which Lombardy was to receive from Fremont 92 percent of the premiums which petitioner paid to Fremont, the unrelated party, measured that portion of the total risk of Fremont assumed by Lombardy, petitioner's captive insurance company. The question is, therefore, whether this 92 percent of the premiums paid by petitioner is, in reality, insurance premiums. Under the definition of insurance, such payments do not constitute insurance premiums unless *577 they are paid to shift risk away from the taxpayer who seeks to deduct them. This portion of the amounts paid to Fremont which were ceded to Lombardy must constitute insurance premiums to be deductible. They are not insurance premiums unless they pay for a shift away from petitioner of 92 percent of petitioner's risk of loss. When petitioner sustains losses covered by its workers' compensation insurance, 92 percent is sustained by Lombardy. Accordingly, because petitioner, through its wholly owned [subsidiary], owns all of Lombardy, it has not shifted the risk of sustaining such losses to unrelated parties in exchange for insurance premiums because the premiums were paid to the wholly owned subsidiary of its wholly owned subsidiary. [Emphasis in original.] In the instant case, when petitioner sustains a loss covered by the Claremont-Bermuda policy, the loss is sustained by Claremont-Bermuda. Accordingly, because petitioner, through its wholly owned subsidiary (Claremont-Zug) owns all of Claremont-Bermuda, it has not shifted the risk of sustaining such losses to unrelated parties in exchange for insurance premiums because the premiums were paid to the wholly owned subsidiary *578 of its wholly owned subsidiary. Consequently, we conclude that the payments of $ 923,116 made by petitioner to Claremont-Zug and Claremont-Bermuda are not deductible as insurance premiums by petitioner for taxable year 1975. [15]
*579 Petitioner asserts that our decision in Clougherty is incorrect as a matter of law. Clougherty has been affirmed on appeal. We have reaffirmed the Clougherty position in Humana v. Commissioner, supra, and this position has also been adopted by other courts, as noted in Humana v. Commissioner,88 T.C. at 206-207. It is unnecessary to restate our analysis. Petitioner cites several opinions involving noninsurance transactions between a parent and its wholly owned subsidiary in which failure to recognize the transactions would result in not treating the parent and its wholly owned subsidiary as separate taxable entities. These cases do not assist petitioner because, in determining the deductibility of petitioner's payments to its subsidiaries, we do treat the transactions as transactions between separate taxable entities. See Clougherty Packing Co. v. Commissioner,811 F.2d at 1305, 1307. We hold for respondent as to 1975. Decision will be entered for respondent.
Footnotes
1. Unless indicated otherwise, all references to taxable years are to petitioner's fiscal years ending January 31. ↩
2. Under an "open" policy all shipments of merchandise described in the policy during a reporting period (usually a month) are covered under a declaration which the insured submits (generally at the end of the month) listing shipment dates, insured values, etc., as opposed to having separate insurance certificates issued on each individual shipment. ↩
3. The parties have stipulated that Ziegler owned 52 percent of Ivira A.G. and petitioner owned only 48 percent. In 1976, petitioner sold its 48 percent to Ziegler. However, petitioner's proposed finding describes Ivira A.G. as "another Swiss subsidiary" and respondent does not object. We treat this as an implicit agreement by the parties to modify their written stipulation. ↩
4. Indeed, as Ziegler noted, the name of Claremont-Zug (Claremont Insurance Services, Ltd.) was chosen "in order to make it amply clear that we do not engage in underwriting of risks." ↩
5. Insurance declarations concern information detailing the shipments to be covered under an insurance policy such as type of cargo, value, destination, etc. ↩
6. Claremont-Bermuda was capitalized by Claremont-Zug in the amount of $ 120,000 and Claremont-Zug subscribed to ownership of 119,995 of its 120,000 authorized shares of stock. The remaining five shares were held by incorporators and directors as nominees for Claremont-Zug. ↩
7. Franchises are percentage limitations on loss claims. For example, a 3-percent franchise would mean that there would be no coverage if a loss were less than 3 percent of the total insured value of the cargo; if the loss were 4 percent, the whole 4 percent would be a covered loss. ↩
8. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the years in issue. ↩
9. Petitioner states on brief the following: Admittedly, Claremont-Zug did not issue any insurance policy to [petitioner] during its first year of existence and through [petitioner's] fiscal year ended January 31, 1974. Accordingly, no issue is raised as to whether the payments to Claremont-Zug are deductible as "insurance premiums" for the year ended January 31, 1974. ↩
10. Section 162(a) provides, in pertinent part, as follows:
SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * ↩
11. Clougherty Packing Co. v. Commissioner,811 F.2d 1297, 1298↩ n. 1 (CA9 1987): "A 'captive insurance company' is a corporation organized for the purpose of insuring the liabilities of its owner." 12. Petitioner decided not to file an answering brief. ↩
13. The parties have stipulated that the disallowed amounts had been deducted by petitioner on its tax returns as "insurance premiums". In its petition, petitioner stated as follows: a. The respondent erroneously disallowed as ordinary and necessary business expenses amounts petitioner paid to [Claremont-Zug] and [Claremont-Bermuda] as insurance premiums.
At the trial, petitioner's counsel declined to present an opening statement. Respondent's counsel stated, in his opening statement, as follows: The only issue then, Your Honor in this case is whether certain amounts deducted as insurance premiums paid by Petitioner to its 100 percent owned subsidiary, [Claremont-Zug] and for part of fiscal, 1975 to that subsidiary's 100 percent owned subsidiary, [Claremont-Bermuda] are deductible as payments for insurance on Petitioner's ocean marine risks.
Petitioner's counsel did not indicate that respondent's counsel erred in so describing "The only issue". We then pressed petitioner's counsel to comment on this Court's opinion in Clougherty. Petitioner's counsel responded as follows: Petitioner's position is that factually Clougherty is different in that in Clougherty, the captive was the reinsurer, the ultimate reinsurer. But basically the Tax Court in Clougherty decided that the court would not recognize as insurance payments to a captive insurer. Petitioner's position is that Clougherty is wrong really as a matter of law and that it wishes to present its case here. Perhaps the Tax Court will be influenced by the arguments to be made that it is wrong and perhaps the Court of Appeals decision will come down shortly which will support the contrary position. ↩
14. We note that respondent allowed deductions in amounts substantially greater than the amounts Claremont-Zug paid for insurance premiums. Petitioner has failed to direct us to any specific evidence in the record that would sustain a holding that petitioner is entitled to deduct more for insurance services↩ than the amounts respondent allowed in excess of Claremont-Zug's payments for insurance premiums. 15. Our analysis is based on the assumption that the policy issued by Claremont-Bermuda was a real policy, i.e., that it created binding obligations between petitioner and Claremont-Bermuda. As respondent has suggested, evidence in the record suggests that independent insurance companies did not write policies with many of the features in Claremont-Bermuda's policy. (See text at n. 7, supra.) Also, petitioner's analysis is based on a contention that, in the instant case, the captive insurance company was the primary insurer and the independent companies were reinsurers (while in Clougherty↩ the independent company was the primary insurer and the captive insurance company was the reinsurer). Yet, CUA did not know that Claremont-Bermuda was an insurance company and CUA was not reinsuring Claremont-Bermuda. Since petitioner loses in the instant case even if the policy is a real policy, we have not further explored the bona fides of the policy.